**Clyde DELPH, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 279S43.

Supreme Court of Indiana.

March 24, 1980.

Harriette Bailey Conn, Public defender, Eugene C. Hollander, Sp. Asst. Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a denial of post-conviction relief. Appellant Delph was convicted in 1966 in the Madison Circuit Court of second degree murder in the stabbing death of Edward Williams and was sentenced to life imprisonment. At the time of the slaying on November 23, 1965, appellant and Williams were inmates in the Indiana Reformatory.

Appellant's post-conviction claim was based upon newly discovered evidence that Larry Boles, also an inmate of the Reformatory at the time of the killing, received special and undisclosed parole and discharge consideration in return for his testimony against appellant at his original trial. A hearing was conducted in the Madison Circuit Court resulting in a finding that appellant had failed in his burden to establish that the State had made promises or granted concessions to Boles in return for his testimony. A decision for the State followed. This is an appeal from that decision.

Appellant relies heavily upon *Newman v. State*, (1975) 263 Ind. 569, 334 N.E.2d 684, also an appeal from the denial of post-conviction relief. Newman sought a new trial because of the concealment by the prosecution of an agreement of leniency it had made with a prosecution witness, an accomplice in the crime charged, for his testimony. *The post-conviction court expressly found that the promise of leniency had been made and unlawfully concealed by the State.* Evidence of that agreement would not have been exculpatory, but this Court deemed it material even though its usefulness was limited to casting doubt on the credibility of the prosecution witness, and reversed the trial court and granted a new trial even though the victim of the crime gave substantially the same evidence as the testimony of the accomplice witness. This Court disagreed with the conclusion of the

trial court that there was "no reasonable likelihood that the evidence would have affected the verdict of the jury or the outcome of the trial." *Newman v. State, supra* at 574, 334 N.E.2d at 688.

Unlike the trial court in *Newman,* the Madison Circuit Court in this case expressly found that appellant Delph failed at the hearing to sustain his burden of establishing that an agreement or understanding had been reached between the witness Boles and the State. In *Roberts v. State,* (1975) 263 Ind. 53, 324 N.E.2d 265, this Court in discussing the proper role of this Court in reviewing a decision against the petitioner in a post-conviction case stated:

"A decision of a trial court against the party bearing the burden of proof will not be set aside on appeal unless the evidence is without conflict and leads unerringly to a result not reached by the trial court." 263 Ind. at 54, 324 N.E.2d at 266.

Appellant's claim at the hearing rested primarily, in addition to his own testimony, upon (1) the testimony of a fellow inmate that Boles had told him that he was going to testify for the prosecution against appellant Delph in return for a parole, (2) upon evidence that Boles was in fact paroled on the day before he testified and discharged on the day after he testified, and (3) upon evidence that Boles' institutional records considered by the Parole Board contained no conduct report or other mention of the fact that Boles had directed appellant Delph to another inmate who actually provided the murder weapon to appellant Delph or was in any manner connected with the Delph matter. It is plain that there was direct and circumstantial evidence tending to establish the existence of an agreement or understanding.

There was other significant evidence presented at the hearing. The prosecutor of Madison County who personally conducted the State's case against appellant testified that he could not recall having countenanced or participated in any offer of leniency to Boles with regard to prosecution or parole. The executive director of the adult authority, who at the time of the slaying of Williams was a teacher at the Reformatory and a confidant of Boles, testified that Boles came to him and openly discussed his connection with the Williams' slaying and he responded by advising Boles to cooperate. This same witness testified that he made no contact with institution officials or the Parole Board about the matter.

Mr. Douthitt, the sole surviving member of the Parole Board which granted Boles parole and discharge in 1966, testified that the Board had no knowledge that Boles would testify in the Delph case when it granted him parole. This witness also swore that the Board received no requests or recommendations by police agencies, institution officials or the prosecution for special treatment or leniency for Boles.

In giving consideration to the evidence of guilt presented at the original trial, one finds that appellant took the witness stand in his own defense and testified in pertinent part regarding the events on November 23, 1965, as follows:

"A. On the morning of November 23rd, me and Williams we had a bet on this fight between Clay and Patterson. Whoever lost the bet was supposed to pay that morning. So, I won and that morning I asked Williams if he had the money to pay the debt and he just said no.

\* \* \* \* \* \*

He said, I'm not going to pay you. He said, if you don't get out of my face, I'm going to bust your head in."

Appellant testified that Boles then offered to get a knife for him to defend himself with, and that he did receive a knife from Boles. The following events were then described during further questioning:

"Q. Causey and Williams were coming out of room eight at that time.

A. Yes, sir.

\* \* \* \* \* \*

Q. What happened then?

A. So, then he grabbed me and I pushed him back and the guy just looked at me real funny like. He was walking on down and walked out of the room and walked across the floor and fell down and he hit the desk with his hands and then went over backwards and landed on the mop bucket.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Did you stab Williams?

A. No, sir, I did not stab him.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Then what did you do?

A. I stood there a second or two and I noticed a crowd started gathering around Williams so I took the knife and throwed it down the hallway. . . . "

The State produced an officer who testified that he was in the course of investigating the stabbing of Williams on the morning it occurred when appellant approached him and said that he had stabbed Williams. Appellant also admitted to another officer that the murder weapon found in the vicinity of the body belonged to him.

Boles testified at the trial that (1) appellant and Williams were having an argument, (2) that he, Boles, had helped appellant get a knife, (3) that he saw appellant approach Williams and the swing at him, (4) that he never actually saw the knife in appellant's possession, and (5) that appellant later told him that he had gotten rid of the knife by throwing it away. The conclusion flows naturally here that even if the evidence presented by appellant at the post-conviction hearing casting doubt on Boles' credibility were established beyond dispute, were material in the constitutional sense, and were omitted evidence, in light of all the evidence presented at the trial, it would not have produced a reasonable doubt as to appellant's guilt, requiring a new trial. *United States v. Agurs*, (1976) 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342.

Returning, however, to the actual posture of this case as it was decided by the trial court, one can only conclude that the direct evidence and ready inferences to be drawn are not compatible in their tendency to establish the existence of an agreement or understanding between Boles and the State. Applying the standard which binds our review here, we are unable to say that the evidence leads unerringly to the conclusion that Boles testified against appellant Delph in return for parole or prosecution concessions, or that it requires the vacation of the conviction in the interests of justice.

The decision of the trial court is therefore affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.