James Branch WISE,
Petitioner–Appellant,

v.

WARDEN, MARYLAND PENITENTIARY, Respondent–Appellee.

No. 86–7076.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 5, 1988.

Decided Feb. 23, 1988.

Tracy Heffernan Merrill, Student Counsel (Steven H. Goldblatt, Ellen Pearlman, Dori Bernstein, Robyn Nordin, Student Counsel, Appellate Litigation Program, Georgetown University Law Center, on brief) for petitioner-appellant.

Valerie Johnston Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Attorney General, Maryland, on brief) for respondent-appellee.

Before WIDENER, ERVIN, and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

This is an appeal of the district court's denial of a petition for a writ of habeas corpus. We reverse and remand with instructions to the district court to dismiss the petition without prejudice so that the petitioner may fully exhaust his state remedies. Because the state courts have not had the opportunity to assess the impact of substantial new evidence upon petitioner's claims, the requirements of the exhaustion doctrine have not been satisfied.

I.

James Wise was convicted of the murder of Tegid Jones and sentenced to life imprisonment by a Maryland state court in 1969. Jones had been shot to death in a gas station restroom with a gun owned by the girlfriend of William Mack. Wise and Mack were both arrested and charged with murder.

Mack testified at Wise's trial pursuant to an agreement with State's Attorney Alfred Truitt in which Truitt agreed to "stet" all charges against Mack in exchange for his testimony. Under Maryland procedure, "stetting" a charge postpones trial on the charge, and "[a] stetted charge may be rescheduled for trial at the request of either party within one year and thereafter only by order of court for good cause shown." Md. Rule 4–248 (1987). Mack also gave a statement to police in which he acknowledged that the State's Attorney had agreed to stet the charges against him and claimed that the State's Attorney had granted him "immunity for any and all charges arising out of the murder of Tegid Jones" in exchange for his cooperation. He acknowledged in the statement that his probation for an unrelated crime would be revoked.

Wise moved for discovery prior to the trial. He requested, *inter alia*, any statements given by witnesses to police or to the State's Attorney, and any evidence not specifically requested which might "reasonably be considered … useful to the defense." The motion was granted, but Wise contends that neither Mack's statement to the police nor his agreement with the State's Attorney was made available.

Mack testified at the trial that he had given the gun to Wise the afternoon of the murder, and that Wise had returned it that evening. He also testified that Wise told him that he had used the gun to kill a man during a robbery. Finally, Mack identified a coat produced at the trial as the coat worn by Wise the night of the murder. Two youths testified that they had seen two men, whom they could not identify, running from the gas station and discussing the shooting. The coat identified by Mack was similar to one allegedly worn by one of the men seen by the youths. No other evidence at trial directly connected Wise to the gun or to the murder.

Prior to Mack's testimony, the court held a conference out of the jury's presence to determine whether Mack understood his right against self-incrimination. At that conference, Wise's trial counsel asked Mack whether he had discussed the case with the State's Attorney, and whether he had been promised a lighter sentence in exchange for his testimony. Despite his agreement with the State's Attorney, Mack testified that he had not. Wise's counsel did not raise these issues in his cross-examination of Mack before the jury.

Following his conviction, Wise filed a series of petitions seeking post-conviction relief, including seven petitions in state court and three federal habeas corpus petitions. In his third state petition, filed in January, 1977, he alleged for the first time that the State's Attorney had withheld evidence. That petition was denied, the court holding that the allegation that the State's Attorney had withheld evidence had been "waived by failure to raise [it] in either the appeal or the first post-conviction petition."

Wise has alleged in each of his subsequent petitions that the state withheld evidence of its negotiations with Mack. In July, 1977, his fourth state petition was denied. Under the Maryland statute providing for post-conviction relief,

> an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner.

Md.Ann. Code art. 27, § 645A(c) (1982). In dismissing Wise's fourth state petition, the court held that Wise had failed to make any showing of "special circumstances" excusing his failure to raise in prior proceedings his allegation regarding the withholding of evidence.

Wise's fifth state petition was accompanied by an affidavit from an inmate who swore that Mack had shown him the written agreement between Mack and the State's Attorney. This petition was dismissed, again for failure to show "special circumstances" excusing Wise's failure to raise the allegation of withheld evidence earlier. Wise's sixth petition, in 1981, was "not accepted for filing" by the state court, and his seventh petition, in 1983, was dismissed.

Wise filed the instant petition, his third federal habeas corpus petition, in January, 1984. An evidentiary hearing was held before a magistrate in April, 1985. At that hearing, Mack's agreement with the State's Attorney was introduced into evidence for the first time, along with a letter from Mack's 1969 counsel stating that he had found the agreement in March, 1985 in his office safe among his insurance papers.

Mack's statement to the police was also introduced into evidence.

The magistrate issued a report and recommendation. He held that Wise had failed, under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to show cause for his failure to comply with state procedural rules and thereby to overcome the state court's finding of procedural default. The magistrate's report and recommendation were adopted by the district court, and Wise's petition was denied.

## II.

Due process requires prosecutors to disclose evidence affecting a witness's credibility "[w]hen the 'reliability of [the] witness may well be determinative of guilt or innocence.'" *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) (*quoting Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)). Mack's testimony provided the only evidence which directly connected Wise to the murder or the murder weapon. His credibility was critical and evidence of his agreement with prosecutors could well have been "determinative of [Wise's] guilt or innocence." The prosecution was therefore required to make available to Wise evidence of the agreement, and failure to do so would have amounted to a violation of Wise's right to due process. We may not consider the substance of Wise's claim, however, unless he has exhausted state remedies. *Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 1201–02, 71 L.Ed.2d 379 (1982).

■■■■ The purpose of the exhaustion doctrine is not to create new hoops through which habeas petitioners must jump. Rather, a requirement of exhaustion protects the primary role of the states in the administration of their criminal justice systems. For the doctrine to accomplish its purposes, the state courts must be given a "'fair opportunity' to apply controlling legal principles to the facts bearing upon [a petitioner's] constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (*quoting*

*Picard v. Connor*, 404 U.S. 270, 275, 277–78, 92 S.Ct. 509, 513–14, 30 L.Ed.2d 438 (1971)).

■■■■ The exhaustion doctrine is not satisfied where a federal habeas petitioner presents evidence which was not presented to the state court and which places his case "in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir.1983). *See also Sampson v. Love*, 782 F.2d 53, 56 (6th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 159, 93 L.Ed.2d 98 (1986); *Jones v. Hess*, 681 F.2d 688, 694 (10th Cir.1982); *Domainque v. Butterworth*, 641 F.2d 8, 12 (1st Cir.1981). A claim is not rendered unexhausted simply because "bits of evidence" were not presented to the state courts. *Jones*, 681 F.2d at 694. However, when critical evidence is presented for the first time to a federal habeas court, it cannot be said that the petitioner has "'fairly presented' to the state courts the 'substance' of his federal claim." *Anderson*, 459 U.S. at 6, 103 S.Ct. at 277. To make federal habeas relief available in such circumstances would undermine the policies of comity and efficiency that underlie the exhaustion doctrine.

In *Sampson v. Love, supra*, the Sixth Circuit considered a habeas petition in circumstances similar to those we face in this case. Sampson, the petitioner in that case, had been convicted of murder and sentenced to sixty years in prison, but his conviction was overturned because the jury had been improperly instructed. On retrial, he was again convicted, but was sentenced to seventy-five years imprisonment. He sought habeas relief, alleging that the higher sentence he received at the second trial was the result of a vindictive jury which knew of his prior conviction and sentencing. *Id.* at 54.

In his petition, Sampson alleged that he did not know whether the second jury knew of the prior sentence, but that there was a "significant possibility" that it did. After the district court found that he had exhausted state remedies, Sampson filed the

affidavits of two jurors from the second trial regarding the second jury's knowledge of the first trial. *Id.* The Sixth Circuit held that the new evidence rendered the claim unexhausted because it "place[d] Sampson's claim in a significantly different posture than that at the state level." *Id.* at 57. The court wrote that "[p]reviously, Sampson could only speculate whether the jurors knew of the prior sentence. Now he ha[d] direct proof." *Id.*

Wise finds himself in the same position. The parties have hotly disputed his claims regarding the withholding of evidence. The state argues that there was no withholding. There was testimony at the evidentiary hearing before the magistrate that Mack's statement to police was found in the police file on the case. Truitt testified that his file and the police file were often the same, that he maintained an "open file" policy, and that he made his file available to Wise's trial counsel. He testified that he told Wise's trial counsel of the agreement he had reached with Mack. Wise contends that his counsel was never shown the agreement or statement, and that, if his counsel was given the prosecutor's file, he was given it at a time when neither the agreement nor the statement was in the file.

In none of the proceedings under Wise's prior petitions, however, did Wise have direct proof of the agreement between Mack and the state. The state court was unable to evaluate the parties' contentions with this direct proof in evidence. Prior to the introduction of this evidence, Wise's claim was supported only by his own allegations and the affidavit of an inmate who claimed to have seen the agreement between Mack and Truitt. The new evidence significantly alters the posture of Wise's claim. The state court, which has never been presented with this critical evidence, must be given an opportunity to evaluate the claim in its new posture and to make the relevant findings of fact to which the federal courts must in turn defer. *See Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981).

## III.

The district court dismissed Wise's petition under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), for state procedural default. We consider that ruling premature. The discovery of new evidence may bear not only on the question of exhaustion but on the existence of a procedural forfeiture under state law as well.

In his report, the magistrate noted that Wise did not raise his claim that evidence had been withheld until his third state petition for post-conviction relief. Under Maryland law, an allegation of error which has not been raised in earlier proceedings is considered waived unless "special circumstances" justify the failure to raise it. Md.Ann.Code art. 27, § 645A(c). In dismissing Wise's fourth petition, the Maryland courts held that Wise's allegation that evidence had been withheld was so waived. The magistrate reviewing the instant petition wrote that Wise "offered no reasonable and valid explanation as to why he did not or could not raise the issue ... prior to the 1977 petition in which it finally was raised," and failed to overcome the state court's finding of procedural default.

Wise's petition was held to be procedurally foreclosed by the state court at a time when his claim consisted only of bald allegations unsupported by concrete evidence. There is, however, a world of difference between conjecture and proof. The recent discovery of the written agreement and Mack's statement may lead the state courts to reconsider their finding of a procedural default. An allegation of error is not waived under the Maryland procedural default statute unless the petitioner has "intelligently and knowingly failed to make such allegation." *Id.* In determining whether a petitioner has made a "knowing and intelligent" waiver, a court must determine "whether he was previously 'aware of and understood the possible defense.'" *Curtis v. State,* 284 Md. 132, 140, 395 A.2d 464, 469 (1978). The discovery of the agreement and the statement may be relevant to this inquiry, and the state court must be given an opportunity to consider

them in determining whether Wise has waived his claim under state law. *See Sampson, supra,* 782 F.2d at 58 ("where the state's remedial process is open to interpretation with respect to the availability of relief via that process, the state should be given an opportunity to adopt that interpretation").

In addition, the failure to raise a claim under Maryland law may be excused because of "special circumstances." The Maryland courts may wish to reassess those circumstances in light of the newly discovered evidence in this case. The "special circumstances" standard applicable in cases of procedural default under Maryland law parallels the "cause" prong of the test set forth in *Wainwright. See also Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2644–46, 91 L.Ed.2d 397 (1986) (default of a claim pursuant to a tactical decision does not constitute cause, but cause is shown where "some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule"). Should the state courts determine that Wise is in fact procedurally barred from pursuing further state relief, a federal court reviewing any future habeas petition by Wise will be required to determine whether Wise had "cause" to excuse his procedural default. State court findings of fact under the "special circumstances" standard may materially assist this inquiry.

Much is disputed about Wise's claim. It remains unclear whether Wise's trial counsel was made aware of the state's agreement with Mack, or whether evidence was withheld. The state courts of Maryland, in which Wise's trial was conducted and which have entertained seven petitions for post-conviction relief, are entitled to the opportunity to assess both the procedural posture of the claim and, if warranted, its merits. We recognize the disadvantages under which any factfinder labors almost twenty years after the operative events have taken place. The riddle of why a generous agreement with the State's Attorney was not used to cross-examine the state's critical witness remains unresolved, however, and we see no alternative but to seek the assistance of the state courts in solving it.

REVERSED AND REMANDED.