James A. BURGIN, Petitioner–Appellee,

v.

G. Michael BROGLIN, et al., Respondents–Appellants.

No. 88–2916.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1989.

Decided April 10, 1990.

Kathryn Butler O'Neall, O'Neall & O'Neall, Remington, Ind., for petitioner-appellee.

Michael A. Schoening, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellants.

Before WOOD, Jr., COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Respondent-appellant, G. Michael Broglin, Superintendent of the Westville (Indiana) Correctional Center appeals from the district court's grant of a writ of habeas corpus to petitioner-appellee, James A. Burgin, under 28 U.S.C. § 2254. Burgin's failure to bring evidence relevant to the existence of an alleged plea agreement between the State and his accomplice, Marlene Beitler, to the attention of the state court during his direct appeal effectively waived his right to challenge the state court's rulings in a federal habeas proceeding based on this evidence. We reverse.

I

James Burgin was convicted of a felony in the Indiana state court system, dealing in a controlled substance, and was sentenced to a period of 14 years of confinement following a jury trial. The conviction resulted from a November 5, 1987, drug transaction in which Burgin and his girlfriend, Marlene Beitler, sold LSD to an undercover police detective at the residence Burgin and Beitler shared. During the meeting between Burgin, Beitler and Allen County, Indiana, Police Detective Steven J. Hamilton, Beitler asked if Hamilton wished to purchase acid (LSD). When Hamilton responded in the affirmative, Beitler left the room to obtain the LSD from the refrigerator. During the ensuing conversation between Hamilton and Burgin, a price of $80 was agreed upon. Burgin refused to handle drugs in Hamilton's presence and stated during their discussion that he had been "busted" previously on drug charges and thus was more cautious with the persons with whom he dealt. Upon Beitler's return, she handed the drugs to Hamilton, who, in turn, passed the $80 to Burgin who counted and pocketed the money.

At Burgin's trial Hamilton and Beitler were the principal prosecution witnesses and their respective testimony corroborated each other concerning the drug conspiracy. Beitler further testified that while she helped Burgin store the drugs, Burgin retained all the proceeds from the drug sales.

During the state court trial there was some testimony during Beitler's direct and cross-examination on the question of whether the state had failed to disclose the alleged fact that Beitler had been offered favorable treatment from the state in exchange for her testimony against Burgin. During her direct examination, Beitler de-

nied that she had any deal or had reached an agreement with the prosecution:

"DANIEL SIEGEL (Prosecutor): You agreed to be a witness here today for the state of Indiana, is that correct?

BEITLER: Yes.

SIEGEL: What, if anything, have you been promised?

BEITLER: Nothing at all.

SIEGEL: Have I told you anything about the case today?

BEITLER: No. Just to tell the truth.

SIEGEL: Have you been promised a suspended sentence or dismissal of charges in order to testify here today?

MR. GRIMM (Defense Attorney): We will object to this your Honor. Seems like it should be improper for him to try and create in the minds of the jury the fact that there is no arrangement or no anything and that the woman is going to just sit here and tell the truth. They can draw that conclusion, we think, on her testimony.

COURT: The objection is overruled. You may answer the question.

SIEGEL: I asked if you have been promised a suspended sentence or dismissal of charges in order for you to testify here today?

BEITLER: No sir."

Under defense attorney Howard Grimm's vigorous cross-examination, Beitler admitted that her case had been continued because she agreed to testify against Burgin but reaffirmed her prior statement that no negotiations had taken place:

"GRIMM: You mean to tell me that you gave up any right to a trial and agreed to testify against Jimmy Burgin and nobody promised you or even led you to believe that you would get any kind of favorable treatment, is that right?

BEITLER: That's right.

GRIMM: So your belief is then I take it that here shortly now you will go on trial yourself?

BEITLER: Yes.

GRIMM: And you will plead not guilty.

BEITLER: Yes sir."

Following Burgin's conviction for dealing in a controlled substance, and pursuant to a plea agreement, Beitler's charge was reduced from a Class B felony to a Class D felony.[1] Beitler was then given a prison sentence of two years that the sentencing judge suspended on the condition she serve six weekends in the County Jail.

Burgin filed a direct appeal of his conviction to the Indiana Supreme Court raising as one issue the question of whether the state impermissibly failed to disclose an agreement made with Beitler for her testimony.[2] The Indiana Supreme Court affirmed Burgin's conviction in *Burgin v. State*, 475 N.E.2d 1155 (Ind.1985). In disposing of the question of whether the nondisclosure of Beitler's alleged plea agreement prejudiced Burgin, the court stated:

"Appellant claims he is entitled to a new trial because the state failed to completely disclose the arrangements made for the testimony of Beitler. There is absolutely no evidence in this record to indicate that there was any transaction between the prosecutor and Beitler prior to her testimony against the appellant.... There is no evidence in this case that there was a failure on the part of the state to disclose an arrangement between the state and Beitler. Mere speculation as to the circumstances surrounding Beitler's testimony is not sufficient to give rise to a presumption that any agreement had been reached. *Asbell v.*

---

1. Ind.Stat.Ann. 35–50–2–5 (Burns 1985), states that: "A person who commits a Class B felony shall be imprisoned for a fixed term of ten [10] years, with not more than ten [10] years added for aggravating circumstances or not more than four years subtracted for mitigating circumstances...." Ind.Stat.Ann. 35–50–2–7(a) (Burns Supp.1989) provides: "A person who commits a Class D felony shall be imprisoned for a fixed term of two (2) years, with not more than two (2) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances...."

2. While his appeal was pending Burgin petitioned the court on December 13, 1984, to expand the record to include the transcript of Beitler's case. The court denied the motion ruling that the Beitler guilty plea and sentencing documents had not been made part of the trial court record.

*State (1984)*, Ind., 468 N.E.2d 845. The appellant must do more than create an inference of an agreement. *Bland v. State (1984)*, Ind., 468 N.E.2d 1032."
*Burgin v. State*, 475 N.E.2d at 1156–57.

■ After the Indiana Supreme Court had denied Burgin's contentions regarding the plea agreement, Burgin, incarcerated at the Westville Corrections Center, Westville, Indiana, filed a 28 U.S.C. § 2254 petition for habeas corpus in federal court on December 4, 1985. The petition was based upon evidence that Burgin's son, Jeffrey Burgin, 14 years of age, allegedly overheard a conversation between Beitler, her attorney and the prosecutor that took place prior to Beitler's testimony against Burgin during the trial on Burgin's state drug charge. During this alleged conversation the parties supposedly discussed an agreement in which Beitler would plead guilty to a lesser charge and receive a reduced sentence in exchange for her testimony against Burgin. The record states that this evidence was discovered "shortly after" Burgin commenced his confinement. However, Burgin's post-conviction petition and the testimony of his son Jeffrey fails to reflect when, in relation to the date of Burgin's confinement, he (Burgin) actually became aware of the details of the evidence. Interestingly, at oral argument, in order to defeat the state's argument on the exhaustion issue, Burgin's attorney stated that "Burgin became aware of what his son had overheard prior to the filing of his appellate brief" before the Indiana Supreme Court, and we accept as true and accurate, her characterization of the time of Burgin's knowledge.[3] In spite of his

3. The dissent is dissatisfied with our acceptance of Burgin's counsel's factual assertion at oral argument concerning the date when Burgin learned of the conversation that Jeffrey Burgin allegedly overheard. Although the parties did not present evidence to the district court concerning the exact date when Burgin learned of the conversation his son Jeffrey allegedly overheard, his attorney's assertion at oral argument concerning the date he learned of the conversation is certainly consistent with the statement in Burgin's petition that he learned of the conversation following his incarceration. Burgin personally signed the petition on file with this court which establishes that he learned of this new information "subsequent to [his] arrival at [Westville Correctional Center]." His attorney's statement at oral argument that "Mr. Burgin became aware of what his son had overheard prior to the filing of his appellate brief" in the Indiana Supreme Court gave Burgin's petition added specificity in noting that Burgin not only learned of the statement following his arrival at the Westville Correctional Center, but that he also had personal knowledge of the statement prior to the completion of his direct appeal in the Indiana court system. In an adversary system, when an attorney makes a factual representation during the course of oral argument that concerns a fact uniquely within her client's knowledge and that is consistent with the record, we see little purpose in a remand merely directing the district court to resolve a supposed "factual" issue. To hold otherwise implies a distrust of the factual representations made by a party's counsel that is fundamentally inconsistent with the principles that a lawyer is an agent of the client and that his representations bind the client. (Although the dissent asserts that the state contended that "knowledge of the overheard conversation came to Burgin only after

his appeal through the state court system had been concluded," Dissent at 999, we are at a loss to understand the evidentiary basis for the state to take, much less for us to adopt, a position contrary to that Burgin's attorney took on this subject when the question of the date of Burgin's awareness of the conversation is peculiarly within Burgin's personal knowledge.) Indeed, our research of the decisions emanating from this court from 1986 to the present date has revealed a number of cases in which we have relied upon an attorney's factual concessions at oral argument as a basis for our decisions. *See Swanson v. Elmhurst Chrysler Plymouth, Inc.*, 882 F.2d 1235, 1239 (7th Cir.1989) (Decision relying in part upon the fact that "[a]t oral argument Swanson's attorney admitted that her work absences were not caused by illness or other maladies related to sexual harassment or hostile workplace"); *United States v. Mayomi*, 873 F.2d 1049, 1050 n. 1 (7th Cir.1989) ("We note that the defendant conceded in his brief and at oral argument that he leased the postal box at Scanner Services—a fact that he denied under oath at trial"); *Estate of Schneider v. Commissioner*, 855 F.2d 435, 441 (7th Cir.1988) ("Schneider's counsel conceded at oral argument that [ANC modified the restrictions in its employee stock ownership plan] without obtaining the expressed consent of either Schneider or the employees"); *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 606 (7th Cir.1987) ("Defendant Continental admitted at oral argument that the premiums due on fire insurance policies were paid for the period covering January 23, 1982, through January 23, 1983"); *Kasper v. Board of Election Commissioners*, 814 F.2d 332, 344 (7th Cir.1987) ("The Board has admitted—in the proposed decree and in oral argument before this court—that its canvasses have facilitated fraud on election day"); *Nazaire v. Trans-*

knowledge of this alleged conversation during the pendency of his state court appeal, Burgin failed to bring the evidence of the conversation Jeffrey Burgin supposedly overheard to the attention of the Indiana state courts. We see no reason why this evidence was not brought to the attention of the Indiana Supreme Court, and Burgin's failure to present this evidence leaves us with a grave doubt as to whether this alleged conversation took place, much less was overheard for this information, if true, would certainly add to his argument. We note that this alleged "new" evidence is the only difference between the record presented in Burgin's unsuccessful attempt to reverse his conviction on the basis of the state's alleged non-disclosure of Beitler's plea agreement in his state court appeal and his attempt to upset his conviction on this same basis in federal habeas corpus proceedings.

The district court granted Burgin's habeas corpus petition on the basis of the alleged newly discovered evidence.[4] The district court concluded that while it had "some lurking doubt" about whether Burgin had exhausted his state remedies, it ruled that Burgin had exhausted these remedies because he would likely be unable to obtain Indiana state post-conviction relief in light of the Indiana Supreme Court's

adverse ruling in his direct appeal concerning the nondisclosure of Beitler's alleged plea agreement. The district court ruled, despite its "lurking doubt" on the exhaustion question, that Burgin had been deprived of due process of law in that the state failed to disclose Beitler's alleged plea agreement to Burgin or to correct Beitler's erroneous testimony concerning the absence of a plea agreement, in effect, denied Burgin his right to due process of law. Neither party raised the question of whether Burgin's failure to bring the evidence of the alleged overheard conversation between Beitler and the prosecuting attorneys to the state courts' attention before instituting a federal proceeding constituted a procedural default. Thus, neither the attorneys nor the district court addressed the procedural default issue.[5]

## II

The Indiana Supreme Court's decision on the question of the non-disclosure of Beitler's alleged plea agreement in Burgin's direct appeal turned upon the fact that "[t]here is no evidence ... that there was a failure on the part of the state to disclose an arrangement between the state and Beitler."[6] In determining the initial

---

*world Airlines, Inc.,* 807 F.2d 1372, 1381 (7th Cir.1986) ("At oral argument counsel for Mr. Nazaire conceded that no amended complaint had ever been filed"). In contrast, in this same period we have failed to discover one decision where we have rejected an attorney's admission at oral argument as an inadequate basis for a factual or legal determination. In light of this precedent for relying upon concessions of a party litigant's counsel at oral argument, we fail to comprehend why the present state of the record leaves the question of "when this evidence was known to Burgin ... too vague." Dissent at 999.

4. Prior to the district court's evidentiary hearing on the habeas corpus petition, the court granted Burgin's Motion to Expand the Record to include the record in Beitler's case. At the evidentiary hearing Jeffrey Burgin testified, over the state's unsuccessful hearsay objection, concerning the conversation he had supposedly overheard. Because we resolve this case on the basis of Burgin's procedural default, we need not resolve the merits of the state's hearsay objection.

5. The dissent places great significance upon the point that "Judge Sharp made no factual finding as to when Burgin actually found out from his son about the alleged plea agreement conversation, except to find that it was 'later.'" Dissent at 999. In light of the absence of this factual determination, most significant to the issue of procedural default, we agree that the district court *should have attempted to ascertain the* specific date Burgin became aware of the allegedly overheard conversation. This was the duty not only of the respective attorneys, but also of the court.

6. *Burgin v. State,* 475 N.E.2d at 1156. The dissent recounts a number of facts from the state court record that lead it to the speculative inference that "these circumstances at least suggest a likelihood of some understanding, if not explicit then implicit, that if Beitler testified against Burgin, her favorable testimony would be given some consideration, and that, in some fashion, she would benefit." Dissent at 999. However, the Indiana Supreme Court in Burgin's direct appeal was unwilling to make a similar factual assumption. The Indiana Supreme Court noted:

question of whether Burgin exhausted his state remedies, we turn to the applicable Indiana post-conviction rules. Indiana Post–Conviction Remedy Rule 1, § 1(a)(4) provides that:

> "(a) Any person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims:
>
> \* \* \* \* \* \*
>
> (4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
>
> \* \* \* \* \* \*
>
> may institute at any time a proceeding under this Rule to secure relief."

The above rule would seem to provide Burgin with an opportunity to present the question of the previously undisclosed conversation Jeffrey Burgin allegedly overheard in a post-conviction proceeding in the Indiana state courts. The record merely recounts that Burgin became aware of this evidence after he was sent to prison, and leaves open the possibility that the evidence was newly discovered following the completion of his state court appeal. Indeed, the State has argued both in its brief and before this court that under the alleged factual situation Burgin would be eligible to pursue post-conviction relief under the Indiana statute. In a case where it is unclear whether a post-conviction remedy is available, we would ordinarily conclude that Burgin is required to commence state proceedings to bring the alleged newly discovered evidence to the Indiana courts' attention in order to permit the Indiana

courts to have an opportunity to consider this evidence in post-conviction proceedings. *See Wise v. Warden, Maryland Penitentiary,* 839 F.2d 1030, 1034–35 (4th Cir. 1988) (state court must be given opportunity to determine whether newly discovered plea agreement of prosecution witness could be validly raised in state post-conviction proceedings); *Sampson v. Love,* 782 F.2d 53, 58 (6th Cir.1986) ("[W]here the state's remedial process is open to interpretation with respect to the availability of relief via that process [in a case raising the question of newly discovered evidence], the state should be given an opportunity to adopt that interpretation"). *See also Rose v. Lundy,* 455 U.S. 509, 519, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982) ("[F]ederal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review"). However, as previously noted, during Burgin's oral argument before the appellate court his counsel, stating Burgin's position, argued that Burgin was aware of the substance of his son Jeffrey's testimony during the pendency of his state appellate court proceedings, but did not bring this testimony to the state court's attention. Thus, since the evidence was known to the petitioner during the state court proceedings, it cannot properly be classified as "newly discovered" evidence; that would entitle the petitioner to pursue post-conviction relief under the Indiana statute. In light of Burgin's counsel's assertion, as to the time Burgin became aware of the alleged evidence, which we accept as true and accu-

---

"Appellant claims he is entitled to a new trial because the State failed to completely disclose the arrangement made for the testimony of Beitler. There is absolutely no evidence in this record to indicate there was any transaction between the prosecutor and Beitler prior to her testimony against the appellant. In fact, upon cross-examination by appellant's counsel, she explicitly stated that no such transaction had occurred; that she expected to be tried on the same charge as appellant; and that she did not know what the outcome of the trial would be.

There is no evidence in this case that there was failure on the part of the state to disclose an arrangement between the State and Beit-

ler. Mere speculation as to the circumstances surrounding Beitler's testimony is not sufficient to give rise to a presumption that any agreement had been reached. The appellant must do more than create an inference of an agreement."

*Burgin,* 475 N.E.2d at 1156–57 (citations omitted). Likewise, we fail to understand how the dissent infers that the facts contained in Burgin's state court record establish an undisclosed agreement between Beitler and the prosecution. The only question of significance is whether the evidence of the conversation Jeffrey Burgin allegedly overheard between Beitler and state prosecutors provides a basis for federal habeas corpus relief.

rate, we are convinced that Burgin was aware of this evidence during the pendency of his direct state court appeal. Thus, we can see no merit to our requiring Burgin to pursue a state post-conviction remedy when his counsel admitted at oral argument that Burgin was aware of the evidence of the allegedly overheard conversation during the state appellate proceedings and when the state post-conviction remedy is applicable only when evidence is newly discovered. *See Mauricio v. Duckworth*, 840 F.2d 454, 456 n. 1 ("[W]here, as here, the grounds asserted for habeas relief are identical to the contentions urged in [the petitioner's] unsuccessful direct appeal to the Indiana Supreme Court, we have previously held that no useful purpose is served by requiring resort to Post–Conviction Rule 1 as a condition of exhaustion") (citing *Montes v. Jenkins*, 581 F.2d 609, 611 (7th Cir.1978)). In light of the facts recited above, we conclude that Burgin has exhausted his state remedies and is entitled to challenge his conviction under federal post-conviction law.

This determination of itself does not permit us to proceed immediately to the merits of Burgin's habeas corpus claim. In *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1252 (7th Cir.1988), we observed:

"If a petitioner fails to raise an issue in state court proceedings, he cannot raise it for the first time in a federal habeas corpus petition. *Washington v. Lane*, 840 F.2d 443, 445 (7th Cir.1988). It is axiomatic that all claims raised in a federal habeas petition must first have been presented to the state courts, i.e., the state courts must have had a prior, fair opportunity to address them. 28 U.S.C. § 2254(b); *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Issues that could have been raised on direct appeal but were not are generally considered waived for purposes of the Indiana post-conviction remedy. *Williams v. Duckworth*, 724 F.2d 1439 (7th Cir.1983), *cert. denied*, 469 U.S. 841, 105 S.Ct. 143, 83 L.Ed.2d 82 (1984). *See Greer v. State*, 262 Ind. 622, 321 N.E.2d 842, 844 (1975).

Waiver in state court of a specific issue prevents federal habeas corpus relief based on that same issue absent a showing of cause and prejudice. *Cartee v. Nix*, 803 F.2d 296, 303 (7th Cir.1986); *United States ex rel. Spurlark v. Wolff*, 699 F.2d 354, 361 (7th Cir.1983)."

(Footnote omitted). *Sotelo* was a case where the habeas petitioner raised a constitutional issue in the state court, but failed to present the issue in the factual context of the attorney's conduct with respect to a lie detector defense that was involved in the federal habeas corpus proceeding. We stated:

"The district court ruled on the merits of Sotelo's sixth amendment claim that he was denied effective assistance of counsel. Although we have no quarrel with Judge Sharp's analysis, it was beyond the district court's authority to address the merits of Sotelo's ineffective assistance of counsel contention because it was never raised in state court. While Sotelo did make a sixth amendment claim in state court, it was with respect to his insanity defense, not with respect to the lie detector test. Therefore, the state courts have not had an opportunity to address the merits of the lie detector allegation, which made its debut before the district court."

*Sotelo*, 850 F.2d at 1252. Based upon these facts, we concluded that "Sotelo has failed to show 'cause' and has not explained why he did not raise this argument in state court; therefore, he waives his claim in federal court." *Id.*

■ Burgin, as in *Sotelo*, raised the constitutional issue of non-disclosure of the alleged plea agreement between the State and Beitler on his direct appeal, but, for some reason totally unexplained in the record, failed to present the suspect evidence of the conversation Jeffrey Burgin allegedly overheard between Beitler and the prosecuting attorney that his attorney states he possessed during the state court proceeding. Burgin's attorney speculated that Burgin failed to present this evidence to the state court because of the Indiana Supreme Court's previous refusal to permit

him to supplement the record regarding the plea agreement itself. Our examination of the applicable federal case law fails to convince us that, under the current state of the law, this explanation constitutes cause for failing to make the state court aware of the evidence of the alleged conversation between Beitler and the prosecuting attorneys. In *Solles v. Israel*, 868 F.2d 242, 250 (7th Cir.1989), we rejected a similar attempt to demonstrate "cause" for failure to present a position to the state court:

> "Solles' sole argument to show cause is that, while discussing an intoxication instruction, the trial judge stated that he was 'hesitant to give something that doesn't come from the Wisconsin Criminal Jury Instructions,' and that therefore counsel was entitled to assume that all the rest of the instructions given would correctly state the law. That argument is without merit. Without a showing of cause, we are precluded from addressing the merits of the erroneous instruction claim."

Similarly, in *United States v. Warner*, 855 F.2d 372, 374 (7th Cir.1988), we held that failure to object cannot be excused on the basis of the trial court's possible adverse reaction:

> "At oral argument, Warner's appellate counsel suggested that Warner refrained from objecting so as not to incur the wrath of the trial judge, who stated he did not want to discuss the burden of proof issue further. This does not excuse a failure to object. Counsel has a ' "duty to object, and even at the risk of incurring the displeasure of the trial court, to insist upon his objection." ' *Sadowski v. Bombardier Ltd.*, 539 F.2d 615, 623 n. 7 (7th Cir.1976) (quoting *Phillips v. Kitt*, 290 F.2d 377, 378 (D.C.Cir. 1961))."

Because of the failure of the petitioner to explain any valid reason for failing to present to the state court the evidence of the conversation Jeffrey Burgin, his 14–year–old son, allegedly overheard, we conclude that Burgin waived the opportunity to present this evidence in state court and, thus, is not entitled to federal habeas corpus relief.

■ One question remains. Although the record supports the conclusion that Burgin is guilty of a procedural default and is not entitled to present evidence of the conversation that allegedly took place between Beitler and the state concerning a plea agreement, does the State's failure to raise the "procedural default" question in the district court preclude us from reaching the issue of whether Burgin is to be charged with a procedural default? In *Washington v. Lane*, 840 F.2d 443, 446–47 (7th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 157, 102 L.Ed.2d 128 (1988), we applied the Supreme Court's decision in *Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987), to the question of whether a court may conclude that a habeas corpus petitioner has waived a claim in a case where the state failed to raise the "waiver" or procedural default question in the district court. Although *Granberry* had been decided in the context of exhaustion of state remedies, our decision in *Washington* applied *Granberry* to the procedural default defense noting that

> " 'the defense the state failed to raise before the district court was that of forfeiture, not of failure to exhaust state remedies. *Nevertheless, we find the analysis outlined in Granberry equally applicable....*' "

*Washington v. Lane*, 840 F.2d at 446 n. 2. In *Washington*, we described the analysis *Granberry* requires in the following way:

> "The State's omission [of a procedural default defense assertion] makes it appropriate for this Court to 'take a fresh look at the issue.' *Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987). The objective of this 'fresh look' is 'to determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of [the petitioner's] claim. *Id.*"

840 F.2d at 446 (footnote omitted). As the Supreme Court noted in *Granberry*:

"If, for example, the case presents an issue on which an unresolved question of fact or state law might have an important bearing, both comity and judicial efficiency may make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis. On the other hand, if it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served even if the state fails to raise the exhaustion defense, the district court denies the habeas petition, and the court of appeals affirms the judgment of the district court forthwith."

*Granberry*, 107 S.Ct. at 1675.

It is clear from the record that the State was proceeding under the assumption that there was merit in the contention that Burgin learned of the alleged conversation that Jeffrey Burgin overheard between Beitler and the prosecutors after the completion of Burgin's state court appeal. Were this the true factual scenario, these alleged facts might be classified "newly discovered" evidence. But the admission of Burgin's counsel at oral argument concerning the fact that Burgin was aware of this information prior to the conclusion of his state court appeal obviously undermined the critical factual foundation underlying the State's position. When the law of *Granberry* is applied to this case, it is evident that this case is not similar to *Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir.1988), where recognition of the waiver defense would "override the State's decision implicit or explicit ... to forego that defense." Burgin's admission at oral argument that he possessed this information at the time of his state court appeal meant that his failure to bring this information to the state court's attention resulted in the waiver of his right to bring the evidence to the federal court's attention. As was the case in *Williams v. Duckworth*, 724 F.2d 1439, 1442 (7th Cir.1983):

"[Petitioner] is ... asking a federal court to consider a matter that he chose never to present to the state court. Perhaps this was a 'deliberate bypass' of the state court, *see Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), in the hopes that the federal forum might be more hospitable to his claim; perhaps petitioner was not seriously troubled by his counsel's performance, and was merely casting about for an additional issue when he drafted his habeas petition. In either case, it would be inappropriate for a federal court to become involved."

Burgin's failure to bring the evidence of the alleged conversation between Beitler and the prosecuting attorneys overheard by Jeffrey Burgin to the state court's attention in a timely manner effectively waived this claim in state court, and Burgin thus is barred from relying on this conversation to support his federal habeas corpus petition. Thus, the petition for the writ of habeas corpus is dismissed and the judgment of the district court is

REVERSED.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

The majority brings this case to an end by finding a "waiver" of the alleged undisclosed plea agreement issue in state court, which bars further litigation of that issue in the federal system. The waiver issue was not raised or addressed by the parties in the district court, nor was waiver raised by the parties as an issue before this court. I would prefer rather than see this case concluded in this fashion to affirm Judge Sharp's grant of the writ, or in the alternative to reverse on the basis that there was no exhaustion of state remedies as urged by the state. Judge Sharp noted that the "substantive evidence of guilt appears to be strong" and that appears to be so, but that does not resolve this case.

The majority bases its holding primarily on the statement of Burgin's court-appointed counsel at oral argument as to when petitioner became aware of the alleged plea bargain conversation. His counsel, in arguing that the claim had been "clearly exhausted," stated to this court that Burgin

knew of this conversation before his state appellate brief was filed. The state, however, contended at oral argument that knowledge of the allegedly overheard conversation came to Burgin only after his appeal through the state court system had been concluded, and therefore there had been no fair opportunity for the state courts to consider that evidence. Judge Sharp made no factual finding as to when Burgin actually found out from his son about the alleged plea agreement conversation, except to find that it was "later." When this evidence was known to Burgin remains for me too vague. The exhaustion argument of defendant's counsel has now been converted by the majority into a waiver. In the particular procedural and factual circumstances of this case I am not satisfied with that result.

Judge Sharp expressed doubts in his Memorandum and Order of September 7, 1988, as to whether petitioner had satisfied the exhaustion requirement in Indiana. Judge Sharp held, however, that there had been compliance, if only "minimal," leaving him with "serious reservations" about available state remedies. In this court, the state forcibly argued that this particular after-discovered evidence claim "has never been presented to the Indiana courts and because there is a method available to petitioner by which he could put this evidence before the Indiana courts petitioner has failed to exhaust his available state remedies." *See Delph v. State*, 273 Ind. 38, 401 N.E.2d 700 (Ind.1980); *Newman v. State*, 263 Ind. 569, 334 N.E.2d 684 (1975). The state made no waiver argument.

The alleged factual circumstances that need to be fully aired are set forth in Burgin's petition quoted in Judge Sharp's Memorandum and Order. Beitler and Burgin were arrested at the same time. Prior to trial, Burgin sought disclosure of any state deals or agreements with any informant. Nothing on that subject was revealed by the state. It seems to be undisputed, however, and admitted by Beitler that prior to Burgin's trial that Beitler and her attorney at least discussed with the state prosecutor the possibility of her testifying against Burgin. Beitler does not,

however, as Judge Sharp wrote, "recall any arrangement whatsoever." As Judge Sharp evaluates Beitler, she was the state's "star witness." Beitler's claim is that she had been promised nothing for her testimony even though it might be helpful to the state against Burgin. Burgin's and Beitler's scheduled joint trial was then severed. Beitler's separate trial was originally scheduled ahead of Burgin's for November 1983. His was set for January 1984. During the course of Beitler's discussions with the state prosecutor, her trial date, however, was continued until after Burgin's trial, and she had had the opportunity to testify against him. This is not an unusual sequence when a plea agreement has been reached. Realistically these circumstances at least suggest the likelihood of some understanding, if not explicit then implicit, that if Beitler testified against Burgin, her favorable testimony would be given some consideration, and that, in some fashion, she would benefit. After Beitler had testified at petitioner's trial she then admitted to a favorable plea agreement. That so-called later favorable plea agreement may not have taken her completely by surprise.

This Beitler earlier plea agreement possibility came primarily from the testimony of Burgin's young son. Judge Sharp heard the boy testify upon direct examination and be subjected to what he described as vigorous cross-examination. Judge Sharp tells us the boy withstood it "admirably." He viewed the boy's evidence as unrefuted and noted that there was nothing to indicate that the prosecutor and Beitler's attorney, neither of whom testified, were for some reason unavailable for that purpose.

Judge Sharp carefully considered this case in the context in which it was presented to him and decided it was necessary to grant the writ. I am not satisfied to conclude this case as does the majority because of my lurking feeling that there well may be something to the alleged Beitler plea arrangement that was not revealed. It is difficult to see why such a viable issue would have been deliberately waived by Burgin by not raising it in the state courts, or if that was not done intentionally then

what conceivable reason or excuse could be offered by Burgin to try to explain that default away. He will, however, not get that chance.

In these particular circumstances I believe justice would be better served by not resolving this case on the basis of waiver.