Ralph Foster JACKSON, Jr., Petitioner–Appellant,

v.

Thomas P. ROTH, Respondent–Appellee.

No. 93–3645.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1994.

Decided May 20, 1994.

---

Frederic R. Klein (argued), Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for petitioner-appellant.

Martha E. Gillis (argued), Office of the Atty. Gen., Criminal Appeals Div., Chicago, IL, for respondent-appellee.

Before POSNER, Chief Judge, BAUER, Circuit Judge, and TINDER, District Judge.[*]

POSNER, Chief Judge.

In 1981, Ralph Jackson, who was then 29 years old and had no previous criminal record, was convicted in an Illinois state court of having raped a woman whom we shall call W. He was sentenced to 30 years in prison, the maximum sentence for the offense. At sentencing, another woman, K., testified that Jackson had raped her too. Although that alleged rape had occurred 18 months earlier, Jackson had been indicted for it only recently and had not yet been tried when he was sentenced for the rape of W. At the sentencing hearing Jackson took the stand and denied having raped K. In imposing the maximum sentence on a man who had no previous criminal record, the judge made clear that

his belief that Jackson had indeed raped K. was decisive. Shortly afterward, Jackson was finally tried for the rape of K. The trial ended in a hung jury. The parties agreed that the retrial would be a bench trial before a different judge who rather than taking evidence would merely read the transcript of the first trial and render his decision on the basis of it. He did so, and acquitted Jackson. That was in 1982. After exhausting his state postconviction remedies, Jackson filed this action for habeas corpus in federal district court in 1993. The court denied relief.

Jackson has been in prison for 13 years, and since Illinois awards good-time credits at the rate of one day for every day served, and since Jackson has behaved himself in prison, he will be released in about two years—after serving a long time, but not as long as the words "30 years" connote. But this is an aside. His entitlement to relief is unrelated to the length of his sentence, except insofar as the decision by the trial judge to give him the maximum sentence was influenced, as undoubtedly it was, by the judge's belief that he had committed two rapes rather than one.

Jackson's main argument, forcefully presented by his able appointed counsel, Frederic Klein, is that the due process clause of the Fourteenth Amendment entitles him to be resentenced by a judge in possession of all the relevant facts, notably Jackson's acquittal of the rape of K. For this proposition Jackson relies principally on *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), which held that if a sentencing judge bases his sentence in part on convictions of the defendant in other cases, and it later turns out that the convictions were obtained in violation of the Constitution, the defendant is constitutionally entitled to be resentenced.

■ We do not think *Tucker* controls this case. *Tucker* is a case about the consequences of an unconstitutional conviction; one consequence is that subsequent convictions or sentences based on it fall with it. See also *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); cf. *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). There is nothing like that here.

---

[*] Hon. John Daniel Tinder of the Southern District of Indiana.

Jackson hints that the state deliberately delayed his trial for the rape of K. in order to use K. as a witness in the sentencing hearing in the W. rape, but it is just a hint, with no support in the record except the timing of K.'s case, which by itself proves nothing. There was nothing unconstitutional about increasing Jackson's sentence on the basis of testimony about another crime for which he had not yet been tried. *United States v. Grayson,* 438 U.S. 41, 52–54, 98 S.Ct. 2610, 2616–17, 57 L.Ed.2d 582 (1978); *Williams v. New York,* 337 U.S. 241, 244, 252, 69 S.Ct. 1079, 1081, 1085, 93 L.Ed. 1337 (1949); *United States v. Johnson,* 507 F.2d 826, 829–30 (7th Cir.1974); *United States v. Doyle,* 348 F.2d 715, 721 (2d Cir.1965) (Friendly, J.). This is a routine feature of sentencing hearings, federal as well as state. See, e.g., *United States v. Ruffin,* 997 F.2d 343, 346 (7th Cir.1993); U.S.S.G. § 4A1.3(e); 730 ILCS 5/5–5–3.2(a)(3). The fact that Jackson was later acquitted does not even demonstrate that the judge committed an error in believing K. Conviction of a crime requires proof of guilt beyond a reasonable doubt, whereas Illinois law prescribes no burden of proof in sentencing, *People v. Taylor,* 61 Ill.App.3d 37, 18 Ill.Dec. 353, 356, 377 N.E.2d 838, 841 (1978), aff'd, 76 Ill.2d 289, 29 Ill.Dec. 103, 391 N.E.2d 366 (1979); a finding in a sentencing hearing that the defendant committed another crime besides the one for which he was tried is entirely consistent, therefore, with the defendant's having been acquitted of the crime. Cf. *United States v. Ruffin, supra,* 997 F.2d at 345; *United States v. Foster,* 19 F.3d 1452, 1455 and n. 1 (D.C.Cir.1994). So there was no error at Jackson's sentencing hearing, let alone a violation of the Constitution, which like the law of Illinois does not prescribe any burden of proof at sentencing hearings. *McMillan v. Pennsylvania,* 477 U.S. 79, 91–92, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986).

■ The error, if any, occurred later, when the state refused Jackson's demand to be resentenced on the basis of his acquittal of the rape of K. The question is therefore when a refusal to reopen a criminal proceeding on the basis of newly discovered evidence constitutes a denial of due process of law. If the newly discovered evidence *clearly* establishes the defendant's *innocence,* a refusal to allow reopening would be tantamount to deliberately refusing to release from prison a person known to be innocent, which could be thought an irrational deprivation of liberty and so a violation of the due process clause, though we held recently that this position is untenable except in cases in which the defendant is sentenced to death. *Milone v. Camp,* 22 F.3d 693, 600–700 (7th Cir.1994). Anyway there is no contention that Jackson did not in fact rape W. The contention rather is that had he been acquitted of the rape of K. before he had been sentenced for raping W. he probably would have gotten a lighter sentence. Probably, not certainly, though not because the judge would have been free to disregard the acquittal, credit K.'s testimony, and conclude that Jackson had in fact raped her. He would have been free to do so, as we have seen, but said he might not have done so. But if confronted with an acquittal of K. the state might well have developed a fuller case in the sentencing hearing in order to overcome the acquittal's effect on the judge. So it is only conjecture that if Jackson's acquittal of raping K. had come before he was sentenced for raping W. he would have gotten a lighter sentence; and if a state decides that such conjecture is not enough to warrant reopening a sentence, its decision is not so unreasonable as to violate the due process clause. A rule automatically reopening all sentences when subsequent events create evidence that might have been but could not be (because it didn't exist yet) used in the sentencing hearing would inject additional uncertainty into the punishment process, undermining the interest in finality that the Supreme Court has repeatedly said is entitled to great weight in the criminal as in the civil setting.

■ Jackson also argues that he received ineffective assistance of counsel because his lawyer could have but did not call members of Jackson's family to testify at the sentencing hearing about his good character, or put in evidence about his employment record, which was good, or call as witnesses two nonfamily members who had known him during his youth and had obtained a favorable impression of him and his family. This is one of those rare cases in which although no plausible tactical reason can be assigned to

the lawyer's failure to put in such evidence—it could not have hurt his case, unlike *Adams v. Wainwright*, 709 F.2d 1443, 1446 (11th Cir.1983) (per curiam), where a similar issue was raised—we do not think that the failure was a violation of minimum professional norms. We stress "minimum." A superb lawyer would of course have left no stone unturned, at least would not have left this stone unturned. Criminal defendants are not entitled, however, at least by the federal Constitution, to superb lawyers. Lawyers who are not superb do not always pursue low-probability avenues for helping their client even when high-probability ones are nonexistent or, if present, still would not be obscured or undermined by the low-probability ones. Cf. *Durrive v. United States*, 4 F.3d 548, 552 (7th Cir.1993). The outstanding "equity" in Jackson's favor at the sentencing hearing was that he had no previous criminal record. That equity was wiped out by K.'s testimony, which Jackson's lawyer tried unsuccessfully to counter by having Jackson testify in contradiction to K. With K.'s testimony believed, Jackson stood before the judge as a repeat rapist, and the maximum sentence probably was inevitable. The probability that the inevitable could be avoided by the predictable testimony of relatives, which receives little weight at sentencing hearings, cf. *Mitchell v. Kemp*, 762 F.2d 886, 890 (11th Cir.1985)—and here the relatives had had only limited, intermittent contact with the defendant for many years—or by proof that Jackson was at least not among the unemployed, or by testimony of persons who had known him as a youth but had not seen him for at least 11 years before the sentencing hearing, was very low; and, to repeat, we do not think that the Constitution requires criminal lawyers to pursue low-probability prospects for acquitting their clients or getting the clients' sentences reduced.

No violation of Jackson's constitutional rights has been shown, and the judgment denying him relief is therefore

AFFIRMED.