**UNITED STATES of America ex rel. Emmaline WILLIAMS, Petitioner,**

v.

**Odie WASHINGTON, Warden, Respondent.**

No. 93 C 3550.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 8, 1994.

Gary Jay Ravitz, Chicago, IL, for petitioner.

Nancy Lynn Grauer, Terence Madsen, Ill. Atty. Gen.'s Office, Chicago, IL, for respondent.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Petitioner Emmaline Williams petitions this court for habeas relief. Petitioner claims she was denied effective assistance of counsel at her Illinois state court trial. Petitioner's petition is granted.

## BACKGROUND

Petitioner and her husband, Roy Williams, were both convicted in a joint bench trial in December 1986 of crimes stemming from the alleged sexual assault upon their adopted daughter, Angela. Angela was thirteen years old at the time of the alleged offenses which allegedly took place in April 1984 in their home. Roy Williams was convicted of rape and sentenced to nineteen years in prison. Petitioner was convicted of indecent liberties with a child and sentenced to a twelve-year term. Roy Williams and petitioner were tried together at a bench trial before Judge Arthur J. Cieslik of the Circuit Court of Cook County. Both petitioner and her husband were represented by attorney Lincoln T. Beauchamp ("Beauchamp").

Angela testified that, in April of 1984, she was raped by her adopted father, Roy Williams, and sexually molested by both Roy Williams and petitioner. Angela further stated that two weeks after the incident she drafted a letter to her former foster mother describing the incident, but that she never mailed it. In June 1985, over a year later, Angela stated that after petitioner beat her and tried to molest her, she fled to the home of her former foster mother. At that time, she informed her former foster mother of the incident. The police were called and given the letter. On June 17, 1985, both petitioner and Roy Williams were arrested.

The bench trial was a relatively brief affair, as the only individuals who testified were Angela, Chicago police officer Lux, the petitioner and her husband. No pretrial motions were presented on behalf of the defendants. Other key evidence presented was the letter written by the victim describing the assault upon her ("the letter") and Roy Williams' post-arrest confession ("confession") which implicated both himself and petitioner. Officer Lux also testified as to post-arrest statements made by petitioner that implicated Roy and herself. No character witnesses were presented in favor of defendants, and no witnesses were presented which would cast doubt on Angela's reputation for truthfulness. Medical records indicating the rape did not take place were not presented (although apparently such records existed). There was no evidence presented regarding the fact that no other individuals in the house heard any outcry, despite the fact several people lived in the house and it was apparently not a large building. Roy Williams' confession was admitted without objection or request for limitation as to its use. The only objection to the introduction of the letter made by Beauchamp was that it had not been produced in discovery. The state's attorney prosecuting the case made a quick examination of Beauchamp's discovery file and located the letter. Beauchamp apologized and the letter was admitted with no further objection. Both Roy Williams and petitioner testified that the incident never occurred. Further, petitioner denied ever making any incriminating statements, and Roy Williams maintained that his confession was both untrue and coerced by false promises of leniency.

Petitioner, represented by her current attorney, Gary Ravitz, appealed her conviction to the Illinois Appellate Court, *People v. Williams*, 182 Ill.App.3d 598, 131 Ill.Dec. 189, 538 N.E.2d 564 (1st Dist.1989), and the Illinois Supreme Court, *People v. Williams*, 139 Ill.2d 1, 150 Ill.Dec. 544, 563 N.E.2d 431 (1990).

The convictions were affirmed in all respects.

The following issues were addressed by the appellate court: [1]

---

**1.** One ongoing point of contention between the state and the petitioner is waiver: what issues were raised in the state court proceedings and which were not. This court's evaluation of the

—joint representation was improper due to counsel's conflict of interest;

—the conflict prevented petitioner from cross-examining Roy Williams;

—petitioner was not advised about the conflict and the benefits of separate counsel;

—the conflict was further manifested by the admission of Roy Williams' statement implicating both;

—counsel was ineffective in several respects, including

(a) failing to challenge the voluntariness of the confession;

(b) failing to adequately prepare for trial by reviewing the discovery materials provided by the State;

(c) failing to object to the letter;

(d) failing to move for a severance;

(e) failing to obtain witnesses as to Angela's reputation for dishonesty;

(f) failing to file pre-trial motions to suppress statements; and

(g) failing to adequately prepare for trial by investigating such matters as medical and school records.

*See* 131 Ill.Dec. at 190–192, 538 N.E.2d at 565–567.

The appellate court rejected all petitioner's arguments. The court held there was no conflict of interest, as both defendants claimed they were innocent and denied making statements. *Id.* at 191–193, 538 N.E.2d at 566–568. The court further held that counsel was not ineffective because pretrial motions would have been futile, and the case was so simple additional preparation and investigation was unnecessary. *Id.* The court also concluded the letter was merely cumulative, given Angela's testimony. *Id.* at 193, 538 N.E.2d at 568. Judge Pincham filed a lengthy and vigorous dissent in which he concluded counsel had been disastrously ineffective and the joint trial was highly prejudicial. *Id.* at 193–234, 538 N.E.2d at 568–609.

The Illinois Supreme Court addressed[2] the following issues:

—whether a conflict of interest precluded joint representation;

—whether petitioner was prejudiced by the admission of the letter; and

—whether defendant was denied effective assistance of counsel.

150 Ill.Dec. at 548, 563 N.E.2d at 435. The Illinois Supreme Court affirmed the conviction in all respects. 150 Ill.Dec. at 548–554, 563 N.E.2d at 435–441.

Petitioner did not make a post-conviction challenge in the state court system, but instead sought habeas relief before this court. The State has conceded that petitioner has exhausted her state court remedies. (State's Answer, p. 1.)

Petitioner maintains that she was denied effective assistance of counsel for the following reasons:

—her attorney had a conflict of interest which prevented him from zealously and effectively representing her, notably by failing to cross-examine Roy Williams and object to Roy Williams' confession which implicated her;

—counsel sought no pretrial discovery;

—counsel filed no pretrial motions to exclude the out of court statements;

—counsel failed to object to the admission of the letter or Roy Williams' confession;

—counsel's overall performance was inadequate, including the failure to cross-examine Angela regarding her letter;

—counsel failed to conduct an adequate investigation.

(Petition, pp. 5–16.)

The State maintains that (1) petitioner waived most of her arguments by failing to properly present them at the state court level; (2) petitioner's interests were not in

issue is complicated by the fact both the Illinois Appellate Court and Illinois Supreme Court decisions are somewhat ambiguous as to what issues were presented. For example, Judge Pincham's dissent in the appellate opinion deals with some matters beyond those discussed in the majority opinion. Further, the Illinois Supreme Court indicates it was presented a "myriad" of allega-

tions, but discussed only some of them. 150 Ill.Dec. at 551, 563 N.E.2d at 438. This court's review of the briefs filed in state court indicate most, if not all, of the same issues were brought to the state court's attention.

**2.** *See* footnote n. 1.

conflict with her co-defendant, and (3) Beauchamp's representation was adequate.[3]

This court granted petitioner a hearing which was held June 17, 1994.

## *ANALYSIS*

### *Waiver*

The State maintains that this court may not consider certain materials presented by petitioner. The State argues that:

> "[a]nything not first presented to a state court may not now be considered, as habeas review does not encompass any new facts, proofs or legal bases that were not fairly presented in support of a constitutional claim in state court. *Keeney v. Tamayo–Reyes,* [——] U.S. [——], 112 S.Ct. 1715 [118 L.Ed.2d 318] (1992); *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–513 [30 L.Ed.2d 438] (1972 [1971]); *Burgin v. Broglin,* 900 F.2d 990, 996 (7th Cir.1990); *Sampson v. Love,* 782 F.2d 53, 56 (6th Cir.1986)."

(State's Reply to Petitioner's Proposed Findings, pp. 1–2.)

■ The State claims that the following materials are barred from consideration:

1. Petitioner's Exhibit 2—the testimony of Angela Williams in an unrelated juvenile court case, *In the Interest of Angela Williams, et al.,* 85 J 8154;

2. Petitioner's Exhibit 4—Beauchamp's file, as it was factual material never presented in state court for consideration;

3. Petitioner's Exhibit 7—the letter of Angela Williams, at least as to the argument that counsel failed to exploit it for impeachment purposes, as that argument was not made to state court;

4. Petitioner's Exhibit 8—the records of the Illinois Department of Children and Family Services (withdrawn by petitioner at hearing);

5. Petitioner's Exhibit 11—police reports (withdrawn by petitioner at hearing);

6. Petitioner's Exhibit 12—the "halfsheet" indicating that no substantive motions were filed on behalf of the petitioner.

(State's Reply to Petitioner's Proposed Findings, pp. 2–3.)

■ To preserve a claim for habeas review, a petitioner must afford the state a full and fair opportunity to resolve the claim on the merits. *Keeney v. Tamayo–Reyes,* —— U.S. ——, ——, 112 S.Ct. 1715, 1720, 118 L.Ed.2d 318 (1992). Before a claim will be considered to have been fairly presented to state court, both the operative facts and controlling legal principles must have been submitted to the state court. *Armstrong v. Young,* No. 91–3877, slip op. at 7, —— F.3d ——, —— (7th Cir., August 24, 1994) (citing *Verdin v. O'Leary,* 972 F.2d 1467, 1474 (7th Cir.1992)). Further, failure to present evidence on direct appeal, when it became available during the pendency of the direct appeal, forecloses presenting the evidence at a subsequent habeas action. *Burgin v. Broglin,* 900 F.2d 990, 997 (7th Cir.1990). The failure to raise a claim in a state court proceeding, and the failure to adequately develop material facts in the state court proceeding, are both evaluated under the cause and prejudice standard. *Tamayo–Reyes,* —— U.S. at —— – ——, 112 S.Ct. at 1718–19.

There is a problem, however, with the State's waiver argument. As pointed out by petitioner, petitioner was not free to expand the record on direct appeal. *Contrast Tamayo–Reyes, supra* (evidentiary hearing at state court collateral proceeding). Further, at least some of the evidence was not produced until discovery in this proceeding, notably Beauchamp's file. While petitioner may have been able to obtain such discovery at a state court collateral proceeding, the State has conceded that petitioner has exhausted her state law remedies for purposes of this petition.

---

**3.** The State calls to this court's attention the result in Roy Williams' habeas petition, which was being evaluated by Judge Alesia contemporaneously with petitioner's petition before this court. Judge Alesia rejected much the same arguments that are now presented by petitioner, and held Roy Williams was not entitled to habeas relief. *See United States of America ex rel Williams v. Peters,* 843 F.Supp. 427 (N.D.Ill., 1994). The Seventh Circuit denied probable cause to appeal in that case. *Williams v. Peters,* 94–2168 (August 10, 1994).

As to the exhibits that have not been withdrawn, this court concludes that only Petitioner's Exhibit 2 is barred. The juvenile proceeding took place during the pendency of the direct appeal and appears foreclosed per *Burgin*. The other exhibits are not foreclosed. Petitioner's Exhibit 4 is not barred, as petitioner was not able to acquire this evidence until discovery before this court. Further, the proposed limitation on Exhibit 7 is not warranted, as this court notes the issue of impeachment was raised in the briefs to the state appellate court. (*See* ↑ fn. # 1.) As to petitioner's Exhibit 12, the fact the lack of pretrial motions was brought up at the state court level makes Exhibit 2 appropriate.

*Ineffective Assistance*

The Supreme Court has established a two-prong test for determining whether counsel's omissions or errors have deprived a criminal defendant of his Sixth Amendment right to counsel. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must demonstrate that counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. The review of counsel's performance is "highly deferential," with care needed to avoid the distorting effects of hindsight. *Id.* at 689, 104 S.Ct. at 2065. There is strong presumption that counsel performed adequately. *Id.* Further, objectively reasonable strategic decisions are not a basis for an ineffective assistance of counsel claim. *Id.* at 689–91, 104 S.Ct. at 2064–65.

The Seventh Circuit has noted that the burden on a defendant in overcoming the presumption of adequate performance is heavy, and has likened the task to passing through the "eye of the needle." *Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir.1987). The Seventh Circuit has also cautioned that the court should not construct a strategy, post-hoc, to support counsel's poor decisions. *Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990). There are decisions made by attorneys to which no possible tactical reason can be assigned. *Jackson v. Roth*, 24 F.3d 1002,

1004–1005 (7th Cir.1994). For an ineffective assistance claim, the focus is on whether there was a violation of minimum professional norms. *Id.* at 1005. A superb lawyer would leave no stone unturned in representing a client. *Id.* "Criminal defendants are not entitled, however, at least by the federal constitution, to superb lawyers. Lawyers who are not superb do not always pursue low-probability avenues for helping their client even when high-probability ones are nonexistent or, if present, still would not be obscured or undermined by the low-probability ones." *Id.* "The constitution does not require criminal lawyers to pursue low-probability prospects for acquitting their clients or getting the client's sentences reduced." *Id.*

The second prong of the test requires the defendant to show that counsel's errors were so serious, they deprived defendant of a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The *Strickland* court held the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Supreme Court has subsequently refined the second prong of the *Strickland* test, stating that the test is not just whether the outcome would have been different, but looking to both the outcome and whether the result was fundamentally unfair or unreliable, with an eye toward avoiding the grant of a windfall to a defendant. *Lockhart v. Fretwell*, —— U.S. ——, ——– ——–, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993). *See also Patel v. United States*, 19 F.3d 1231, 1235 (7th Cir.1994) (The prejudice prong focuses on whether counsel's performance deprived defendant of a fair trial.) To assert a valid claim, both prongs of the test must be satisfied. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. If the defendant fails to make an adequate showing on one prong, the court need not address the other. *Milone v. Camp*, 22 F.3d 693, 703–704 (7th Cir.1994).

Further, when a petitioner claims trial counsel failed to call a witness, petition-

er must make a specific showing what the missing evidence would have been and prove the testimony would have produced a different result. *Patel,* 19 F.3d at 1236. Counsel's failure to call character witnesses, even if deficient, will not prejudice defendant if their testimony is unlikely to alter the outcome. *Milone,* 22 F.3d at 704 (discussing issue of character witnesses at sentencing).

### Failure to Investigate

 Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Montgomery v. Petersen,* 846 F.2d 407, 412 (7th Cir.1988) (citing *Strickland,* 466 U.S. at 690–91; 104 S.Ct. at 2066); *see also Balfour v. Haws,* 892 F.2d 556, 564 (7th Cir.1989); *United States v. Olson,* 846 F.2d 1103, 1109 (7th Cir.1988), *cert. den.* 488 U.S. 850, 109 S.Ct. 131, 102 L.Ed.2d 104 (1988). Although it is not necessary for defense counsel to track down every lead or personally investigate every evidentiary possibility before choosing a defense, counsel has a duty to contact potential witnesses, unless counsel can make a rational decision that the investigation is unnecessary. *Montgomery,* 846 F.2d at 413. In addition, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Olson,* 846 F.2d at 1109.

 Failure to interview the only available disinterested alibi witness was ineffective assistance of counsel. *Montgomery,* 846 F.2d at 413. Failure to introduce prior inconsistent statements of state's witnesses, particularly when such evidence is consistent with defense's theory, is deficient performance. *Moffett v. Kolb,* 930 F.2d 1156, 1161 (7th Cir.1991). Failure to call witnesses, coupled with a failure to interview witnesses to ascertain their value, because of a perceived weakness of the prosecution's case constitutes ineffective assistance of counsel. *Harris,* 894 F.2d at 878. Counsel cannot be permitted to "tempt the fates" with such conduct. *Id.*

---

**4.** The claim that Beauchamp failed to seek pretrial discovery seems to have been dropped. Given that the State turned over the required

At the hearing, Beauchamp testified that he viewed the case as simply the word of the victim against that of his clients. (Hearing Transcript, p. 46.) Beauchamp stated that he conducted *no* investigation, other than speaking with his clients, and did not interview any witnesses, including those on the state's witness list. (*Id.* at 33, 48.) Beauchamp's other stated justification for not conducting an investigation was that his clients were not anxious for him to involve others, given the nature of the charges. (*Id.* at 48.) Beauchamp further states that the entire contents of his file had been turned over, and that any notes he would have taken or any investigative material he acquired would have been in the file. (*Id.* at 9–12, 28, 41.) A review of the file supports Beauchamp's testimony that he did nothing, as the only item well-documented in the file was the payment of Beauchamp's fees. Petitioner testified that her conduct with Beauchamp was extremely limited. (*Id.* at 61–65.)

 Petitioner maintains that Beauchamp's investigation was inadequate because:

—he failed to interview witnesses;

—disregarded potentially favorable medical testimony (a medical report that the daughter's hymen may have been intact);

—failed to investigate the alleged crime scene;

—failed to investigate the victim's reputation for veracity (via teachers and school records);

—failed to review discovery submitted by the State (notably the letter);[4]

—failed to properly interview petitioner for purposes of preparing the case.

(Petitioner's Proposed Findings, pp. 10–18.) Petitioner maintains that this failure to investigate left Beauchamp no basis on which to make strategic and tactical decisions. This court must conclude petitioner is correct.

---

discovery materials, in conformance with its obligations, the claim was meritless in any event.

Contrary to Beauchamp's testimony at the evidentiary hearing conduct by this court, the case did not simply boil down to Angela's word against the petitioner's. (*See* Hearing Transcript, p. 46.) Given Roy Williams confession and Officer Lux's testimony regarding petitioner's statements, the balance was clearly tipped in the State's favor. Beauchamp "tempted the fates" when he elected to rely on his perceived weakness of the prosecution's case by not seeking any other evidence in support of the petitioner's defense.

First, counsel's duty to investigate would necessarily include a review of the discovery materials provided by the State. Beauchamp's surprise at the letter being introduced at trial, and the embarrassing moment when the state's attorney quickly located it in Beauchamp's file, indicates that Beauchamp did not do so. Counsel Beauchamp obviously should have objected to the admission of the letter, but he was unaware of it and had not reviewed it. Further, even if admitted, the letter provided ample material for impeachment of Angela's testimony. There were inconsistencies in the letter an adequately prepared defense counsel could exploit. Given that Beauchamp viewed the case as a credibility dispute, it was obvious impeachment of Angela was critical. Further, counsel failed to attempt to interview any of the individuals on the State's witness list. Obviously such interviews could have been helpful in getting a fuller tactical picture of the State's case and potentially acquiring helpful evidence. Failing to call witnesses, when one fails to ascertain if they would contribute to one's case by interviewing them, is deficient performance. *See Harris,* 894 F.2d at 878.

Counsel Beauchamp also failed to investigate medical reports.[5] Whether the alleged crime took place, or could have taken place in the manner Angela testified, is clearly relevant to petitioner's defense. There is no justification for not pursuing such potentially helpful evidence.

Counsel Beauchamp also failed to investigate the petitioner's home and interview the other occupants. Petitioner states this evidence would have indicated that, given the layout of the home and the relatively crowded conditions, the alleged assault could not have taken place as claimed, particularly as regards "outcry." Counsel's stated reason for not investigating the petitioner's home was that it was his *policy* to not go to a client's home as he has no business there. (Hearing Transcript, pp. 39–40.) Counsel's stated justification is troubling, as it indicates a total disregard of his obligations as counsel. The petitioner's home was the alleged crime scene. An "office policy" cannot overrule Beauchamp's obligations as defense counsel. Beauchamp did not consider an investigation of the home, and was apparently incapable of grasping its potential importance.[6] The failure to interview the other residents of the house was also unjustified. Petitioner's alleged reluctance to involve others, which would not have materially affected counsel's duty to investigate, did not apply regarding these individuals who were already aware of the case.

Beauchamp further failed to investigate Angela's reputation for veracity. The focus in this issue has been on two letters written by teachers at Angela's school indicating Angela was a pathological liar. (Petitioner's Exhibits 9, 10.) Both these letters were

---

5. Such reports apparently existed. Even though this evidence was withdrawn, the matter was considered by Judge Pincham in his dissent. *See* 131 Ill.Dec. at 216–216, 538 N.E.2d at 591–591. Further, Beauchamp ambiguously referred to the potential existence of such reports in his cross-examination of Angela. (State Trial Court Transcript, pp. 45–46.) This indicates Beauchamp was aware of such material, but, inexplicably, failed to pursue it and introduce it into evidence. While evidence of an intact hymen would not be conclusive, it would clearly be helpful in establishing reasonable doubt.

6. This is not the only example from the hearing which indicated Beauchamp misunderstood his obligations as an attorney to this client or was unaware of relevant legal principles. At the opening of the proceeding before this court, Beauchamp objected to his being called to testify as he viewed this matter as largely a *personal dispute* between himself and Mr. Ravitz. (Hearing Transcript, p. 3.) This court informed Beauchamp that the reason Beauchamp was before the court was to determine if his former client had been denied her constitutional rights. (*Id.* at 3–4.)

disregarded as irrelevant by the Illinois courts as impermissible opinion. The State argues that this court should concur. The key is not the letters themselves, which are properly excludable, but what they would mean to a competent attorney's investigation. Based on the letters, a competent defense attorney would have sought evidence at school regarding Angela's reputation for veracity. Beauchamp's comments regarding the teachers' letters indicate, again, a miscomprehension of the law and his obligations. When asked at the evidentiary hearing if the teacher's testimony regarding Angela's reputation would have been helpful, Beauchamp replied "They may have. I don't know." (Hearing Transcript, p. 48.) When asked why he did not speak with anyone from Angela's school, Beauchamp stated that the people at school were not present when the rape occurred and could therefore not give any information. (*Id.* at 49.) Beauchamp apparently did not consider the concept of reputation evidence and did not seek to obtain it to impeach Angela.

Petitioner also claims that counsel Beauchamp spent inadequate time interviewing her and preparing her for trial. While there is no constitutionally mandated minimum number of meetings between attorney and client, *Olson,* 846 F.2d at 1108, petitioner's claim has merit.

Petitioner testified that the contacts with Beauchamp were extremely limited, and primarily devoted to discussing his fee. Beauchamp testified to numerous meetings. A review of Beauchamp's file, which includes a great deal of fee documentation, but little else, and a review of Beauchamp's performance before the trial court, supports petitioner's testimony. The lack of preparation and investigation into the facts and law is evident from strategic blunders made by Beauchamp, particularly as regards joint representation matters.

Counsel Beauchamp did not object to the admission of co-defendant Roy Williams' confession into evidence or make any pretrial motions to suppress it or sever petitioner's case from Roy Williams' case. There appeared to be a basis for a motion to suppress, given Roy Williams' claims of coercion and false promises of leniency. *See Lord v. Duckworth,* 29 F.3d 1216 (7th Cir.1994). Given the overall circumstances of the alleged confession, however, there is a strong probability such a motion would be denied. *See Williams,* 843 F.Supp. at 433 (no ineffective assistance given lack of merit to such a motion). Thus, the failure to make a pretrial motion to suppress the statement may not have been ineffective assistance. However, there is no conceivable strategic justification for failing to object to use of the confession as to petitioner. The confession was clearly objectionable, as to use against petitioner, under the Supreme Court's decision in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and its progeny. While the petitioner was tried at a bench trial, a review of the record does not indicate the judge limited the confession's use. As will be discussed in the next section, Beauchamp was unaware of *Bruton* and its progeny.[7]

Defense counsel Beauchamp's conduct was clearly deficient. The only issue remaining is whether defense counsel's deficiencies were such that petitioner was deprived of a fair trial. This court must conclude she was. Defense counsel Beauchamp did little to support petitioner's position or subject the State's case to an advocate's testing. While a defense counsel is not required to leave "no stone unturned" or pursue low-probability of success issues, counsel is required to, for want of a better phrase, turn over the "large stones" and pursue the obvious issues. Counsel failed to review the

---

7. The confession itself raises several issues. Beauchamp testified he *may* never have seen it, and it was not in his working file. Both sides are in agreement, however, that the State provided it to Beauchamp, as required. This is bolstered by Beauchamp's failure to express surprise when it was introduced, in contrast to his reaction to the introduction of the letter. This is somewhat odd, given Beauchamp testified his clients told him

they made no pretrial statements. (Hearing Transcript, p. 53.) There is no conceivable justification for failing to evaluate a client's confession and the circumstances under which it was obtained. Further, Beauchamp's failure to familiarize himself with relevant case law, such as the United States Supreme Court's *Bruton* opinion, indicates he violated his obligation to conduct an adequate investigation as to the law.

discovery turned over by the prosecution. Counsel failed to interview any witnesses. Counsel failed to pursue evidence as to whether the crime occurred. Counsel failed to pursue impeachment material against the complainant. None of defense counsel's decisions could be deemed objectively reasonable strategy decisions, as they were typically based on ignorance of the facts and law. Counsel must subject the prosecution's case to an advocate's testing. Defense counsel may not merely sit at counsel's table hoping the judge or jury elects not to believe the victim's testimony. Counsel Beauchamp, in doing so, particularly in the face of the post-arrest confessions, tempted the fates and undermined the integrity of the proceeding. Counsel Beauchamp, in short, failed to provide petitioner a fair trial.

*Joint Representation/Severance Issues*

Given this court's conclusions regarding counsel Beauchamp's investigation, these matters will be addressed only briefly.

A criminal defendant is entitled to an attorney who gives his client his undivided loyalty. *United State v. Barnes,* 909 F.2d 1059, 1065 (7th Cir.1990). A claim of ineffective assistance is possible when the attorney is burdened by a conflict of interest. *Id.* Joint representations, however, do not constitute per se violations of the Sixth Amendment. *United States ex rel. McCall v. O'Grady,* 908 F.2d 170, 172 (7th Cir.1990) (citing *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978)). To establish ineffective assistance based on a conflict of interest, a defendant, who did not object at trial, must demonstrate an actual conflict of interest that adversely affected the performance of his counsel. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980) Proof of an actual conflict of interest creates a presumption of prejudice. *Id.* at 345–50, 100 S.Ct. at 1716–19.

Severance is appropriate if the defendants' defenses are mutually antagonistic; mutual antagonism is present if: (1) the defenses are so inconsistent that the making of a defense by one party will lead to an unjustifiable inference of another's guilt; or (2) the acceptance of a defense precludes acquittal of the other defendant. *United States ex rel. Williams v. Peters,* 843 F.Supp. 427, 433 (N.D.Ill.1994) (citing *Stomner v. Kolb,* 903 F.2d 1123, 1127 (7th Cir.) *cert. den.* 498 U.S. 924, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990)). Further, the Seventh Circuit has a preference for the joint trial of those who engaged in a common enterprise, which has the benefits of (1) saving prosecutorial time and resources; (2) providing the jury with a broad perspective; and (3) reducing the chance the defendant will attempt to create reasonable doubt by blaming an absent colleague when both participated in the offense. *Id.* (citing *United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.) *cert. den.* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987)).

In the parallel case involving Roy Williams, Judge Alesia concluded that no specific facts or acts by counsel indicating an actual conflict of interest were raised. *Id.* at 435. Further, Judge Alesia concluded that foregoing a motion to sever was a reasonable strategic decision, despite petitioner's pre-trial statements implicating Roy Williams, because both parties had a common defense, denied the crime occurred, and denied making the incriminating post-arrest statements. *Id.* at 433.

It is undisputed that Beauchamp never discussed the merits of separate counsel for petitioner or ever discussed, or considered, the appropriateness of a severance. As Beauchamp never considered these matters, no strategic decision was made.

Petitioner argues the following regarding the alleged conflict of interest:

—Roy Williams' confession created an impermissible conflict of interest;

—Beauchamp never explained the conflict or sought a waiver of it;

—Beauchamp could not cross-examine Roy Williams regarding his testimony on petitioner's back problem; [8]

**8.** Roy Williams testified as to petitioner's occasional back problems. This was consistent with

Angela's testimony that the assault took place because petitioner was incapable of having sex

—Beauchamp was not free to make decisions regarding petitioner, such as a plea or defense of mere presence, given the joint representation.

(Petitioner's Proposed Findings, pp. 7–10.)

The State argues that this issue is barred, as the Illinois Supreme Court found the issue waived. *See Williams,* 150 Ill.Dec. at 550, 563 N.E.2d at 437. The State maintains that the finding constitutes an adequate and independent state law ground for decision that bars subsequent habeas review. (State's Reply to Petitioner's Proposed Findings, ¶ 6, citing *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); *Rose v. Lane,* 910 F.2d 400, 402 (7th Cir. 1990)).

Given this court's earlier decision, this issue need not be addressed. However, given the special relationship between the defendants, and their common defense and wish to testify on each other's behalf, it is unlikely a separate plea agreement or mere presence defense would be pursued. Further, the back injury testimony was of rather limited significance. This claim is likely meritless, even if not found to be waived.[9]

The issue of severance, at least as to petitioner, was not a reasonable tactical decision. First, Beauchamp concedes that he never discussed the issue of severance with petitioner. (Hearing Transcript, pp. 44–45.) More troublingly, Beauchamp testified that he was completely unfamiliar with the *Bruton* case and its progeny. In *Bruton v. United States,* the United States Supreme Court restricted the use of a codefendant's confession, against another defendant at a joint trial. *See* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The existence of Roy Williams' confession, and a knowledge of *Bruton* and its progeny, would have undoubtedly led a competent defense attorney to at least consider a severance. Beauchamp's decision not to seek a severance cannot be deemed a strategic decision as it was based upon ignorance. Further, such a severed trial, without Roy Williams' confession, would have been a far different proceeding, far

more like the swearing match between Angela and petitioner which Beauchamp apparently envisioned.

### CONCLUSION

For the reasons given above, petitioner's petition for habeas relief is GRANTED. The state of Illinois is directed to provide petitioner with a new trial within 120 days of the date of this order.

---

due to back problems. The back problem issue was inconsistent with the account of the attack Angela gave in the letter.

**9.** See footnote # 1.