Jerry Joe **MEDINA**, Petitioner–Appellant,

v.

**M. Eldon BARNES, Warden,**
**Respondent–Appellee.**

**Nos. 94–4222, 95–4006.**

United States Court of Appeals,
Tenth Circuit.

Dec. 5, 1995.

---

Jerry Joe Medina, pro se, for Petitioner–Appellant.

Angela F. Micklos, Assistant Attorney General, and Jan Graham, Attorney General, State of Utah, Salt Lake City, Utah, for Respondent–Appellee.

Before TACHA, LOGAN, and BRISCOE, Circuit Judges.

LOGAN, Circuit Judge.

I

Petitioner Jerry Joe Medina appeals the second dismissal of his habeas corpus petition, *see* 28 U.S.C. § 2254, following our remand to the district court after the original dismissal. *Medina v. Barnes,* 982 F.2d 529 (1992). The remand order focused on petitioner's allegations that two key prosecution

witnesses gave perjured testimony, thereby undermining the fundamental fairness of petitioner's trial and second degree murder conviction. The district court dismissed again after determining petitioner failed to make the requisite showing that would entitle him to an evidentiary hearing in federal court. The issue on appeal is whether petitioner made the necessary showing to obtain an evidentiary hearing in which he might establish cause and prejudice for failing to develop in state court the underlying facts to support his allegations of perjured testimony. We review de novo the denial of habeas relief. *Sinclair v. Henman,* 986 F.2d 407, 408 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 129, —— L.Ed.2d —— (1993).[1]

Petitioner was convicted in the shooting death of George Givens, a/k/a Gregory Newman. Petitioner first met Givens on the night of the murder. The shooting occurred at a party attended by Givens and an acquaintance, Rickey Myers, which petitioner also attended. Myers was a key government witness who provided the only eyewitness testimony identifying petitioner as the killer. The other principal government witness was Eli Archuleta, who testified that petitioner made an incriminating statement that he had killed Givens with a .32 caliber pistol. Petitioner asserts that Myers and Archuleta gave perjured testimony, and that petitioner is entitled to an evidentiary hearing to establish disputed facts concerning the use of this testimony.

■ To be entitled to an evidentiary hearing in a federal habeas action, the petitioner must first make allegations which, if proved, would entitle him to relief. *Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963), *overruled on other grounds by Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). If the petitioner does that the court must then determine whether petitioner is entitled to an evidentiary hearing to resolve any disputed facts underlying his claims. *Id.* at 309, 83 S.Ct. at 755.

Our prior order remanded this case for consideration of petitioner's allegations that his conviction was unlawfully premised upon Myers' and Archuleta's allegedly perjured testimony. Those allegations were the basis for petitioner's claims that he received ineffective attorney representation—from his trial lawyer for failing to discover the evidence establishing the falsity of this testimony, and from his appellate lawyer for failing to assert this evidence in his direct appeal. Further, petitioner claims that the prosecutor knowingly used false testimony and withheld evidence from petitioner that would have contradicted Myers' and Archuleta's testimony. Now, having the benefit of the state court record,[2] we conclude that most of petitioner's allegations are meritless.[3] But one, that pe-

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

**2.** Neither the district court, nor this court, in considering petitioner's prior appeal, had the state court record before it. In order to properly resolve this appeal we have, on our own motion, supplemented the appellate record to include the state court record in *State v. Medina,* No. CR–84–814. *See* Fed.R.App.P. 10(e).

**3.** In addition to the claims implicated in this court's remand order concerning the allegedly false testimony of Archuleta and Myers, petitioner also asserted the following grounds for relief: (1) the state court post-conviction proceedings denied him a full and fair evidentiary hearing, due process and access to the courts; (2) his trial counsel provided ineffective representation by failing (a) to conduct an adequate investigation concerning the testimony of Detective John Johnson; (b) to object, and to preserve for review, the prosecutor's inflammatory closing argument; and (c) to object to the *Allen* instruction, contrary to petitioner's instructions, *see Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); (d) to give the hung jury a lesser included offense instruction; (3) the *Allen* instruction given to the jury was legally erroneous; (4) the prosecutor improperly (a) used the perjured testimony; (b) withheld exculpatory evidence; and (c) made an inflammatory closing argument; (5) petitioner's counsel on direct appeal was ineffective because he failed to raise the issues of (a) Johnson's false testimony; and (b) the prosecutor's inflammatory closing argument; and (6) there was insufficient evidence to support his conviction for second degree murder.

Although this court's order and judgment ordering remand in the earlier appeal did not address specifically these issues presumably they were found meritless. *See Medina v. Barnes,* 982

titioner's claim of trial counsel's ineffectiveness in failing to conduct an investigation that would have uncovered evidence undermining Myers' testimony, states a claim entitling petitioner to an evidentiary hearing.

## II

### A

■ Petitioner's allegations that the prosecutor knowingly used perjured testimony must fail because petitioner has not pointed to any evidence that the prosecutor was aware the testimony of his two key witnesses might be false. For the same reason, petitioner's claim that the prosecutor withheld exculpatory evidence tending to contradict or undermine Myers' and Archuleta's testimony lacks merit. Petitioner states no facts that would support his assertion that the prosecution was in possession of such evidence. *See Hatch v. State of Oklahoma,* 58 F.3d 1447, 1469–70 (10th Cir.1995). Because these claims were meritless, any allegation that appellate counsel was ineffective for failing to raise them on direct appeal must also fail. *See Banks v. Reynolds,* 54 F.3d 1508, 1515 (10th Cir.1995). In addition, petitioner's appellate counsel did file a motion with the Utah Supreme Court submitting the newly discovered evidence contradicting Myers' and Archuleta's testimony. That court denied the motion on the basis that it involved matters outside the trial court record. Thus, appellate counsel was not constitutionally ineffective on the basis petitioner alleges.

### B

■ Petitioner contends that his trial counsel was ineffective for failing to conduct an adequate investigation that would have revealed evidence impeaching Eli Archuleta's testimony. Archuleta gave somewhat confusing testimony that he had sold petitioner a .38 caliber weapon and that, after the shooting, petitioner approached Archuleta in The

Annex bar and assured Archuleta that he had shot the victim with another weapon, a .32 caliber gun.[4] Petitioner argues that an adequate investigation by counsel would have revealed that Archuleta was testifying pursuant to an agreement with the prosecution not to prosecute him or revoke his parole. Petitioner also asserts that before trial Archuleta had been involved in an ongoing argument with Leonard Fernandez, petitioner's cousin and a key defense witness, and that Archuleta had tried to kill Fernandez and had threatened Fernandez' family.

These issues, however, were raised at trial. Also, defense counsel presented rebuttal testimony concerning the feud between Archuleta and Fernandez. The only additional evidence petitioner asserts counsel should have obtained was the testimony of a part-time disc jockey who worked at The Annex who, according to his affidavit, could have testified that he knew both petitioner and Archuleta. The disc jockey purportedly would have testified that he had never seen petitioner in The Annex, nor had he ever seen petitioner socializing with Archuleta. I R. doc. 3, addendum at 16. This additional evidence is at most cumulative, and of limited probative value; it cannot provide the basis for habeas relief. *See Romero v. Tansy,* 46 F.3d 1024, 1030 (10th Cir.) (considering potential value to defense of evidence counsel might have discovered in assessing whether counsel was ineffective for failing to conduct investigation), *cert. denied,* —— U.S. ——, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995). Petitioner's ineffectiveness claim based on trial counsel's inadequately investigating Archuleta's testimony must fail.

### C

Petitioner's allegation that trial counsel was ineffective for failing to adequately investigate Rickey Myers' trial testimony is a much more serious issue. Myers was the only eyewitness to testify, and he identified

---

F.2d 529 (10th Cir.1992). In any event we have examined the entire state court record and are satisfied that only the issues we treat here in the text are sufficiently meritorious to warrant discussion.

4. The coroner determined that the fatal wound could have been inflicted by either a .32 or a .38 caliber bullet. IV Supp.R. 563. A state criminalist indicated that the fragments taken from the victim were consistent with either a .357 or a .38 caliber bullet. *Id.* at 657–58.

petitioner as the shooter. Myers further testified that he had only met the victim that same evening while sight-seeing when the victim had invited Myers to party with him; and he testified that he, Myers, did not have any criminal record. Petitioner asserts, however, that after the trial he received information from an assistant district attorney and an FBI agent that Myers had a lengthy criminal history, had known and been involved in criminal activity with the victim for some time, and had been in prison with the victim. Petitioner asserts that had his attorney conducted an adequate pretrial investigation she would have discovered these facts.

■ To be entitled to habeas relief due to the ineffectiveness of defense counsel, petitioner must establish both that counsel's performance was deficient and that the deficiencies prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We evaluate counsel's performance from her perspective at the time of that performance, considered in light of all the circumstances, and we indulge a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

■ The defense theorized at trial that Myers, rather than petitioner, shot the victim as Myers and the victim left the party. Defense counsel contended as much in her opening statement:

> Listen very carefully ... to see if the State can tell you why Mr. Medina would kill Mr. Givens when they had no contact, when there's no evidence that he even knew him, and you listen carefully to Rickey Myers who has spent time with Mr. Givens—he said he had just met him, but we don't know that—who spent time with him and obviously had more of an opportunity to build up a reason.

III Supp.R. 177. The issue whether Myers knew the victim before the evening of the

shooting, therefore, was crucial to petitioner's defense. Further, defense counsel cross-examined a police detective about Myers' criminal record. *See* IV Supp.R. 500, 508. That detective testified that police had discovered no criminal history for Myers, but that their search had been limited to the State of Utah. *Id.* at 508. Myers himself denied ever having been convicted of a crime. *Id.* at 601. Thus, these issues were critical to the defense; and defense counsel herself identified them as such. Consequently, petitioner's argument that his attorney failed to conduct an adequate investigation into these matters sufficiently alleges performance falling below the objective standard of reasonable representation. *See Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064–65.

■ Having made allegations which, if proven, would establish counsel's constitutionally deficient performance, petitioner must also establish prejudice to his defense as a result of that deficient performance. *Id.* at 687, 104 S.Ct. at 2064. Prejudice will be established if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Our review of the record convinces us that Myers' testimony was crucial to petitioner's conviction. Myers was presented as the only eyewitness to the murder. The record contains no testimony about a confrontation between petitioner and the victim. The only other evidence supporting the conviction were: (1) a live .38 caliber bullet found in petitioner's car the morning after the murder—which may or may not have been the same caliber as the fatal bullet; and (2) Archuleta's testimony—previously discussed, which was confusing and questionable.[5] Myers' testimony was critical. And the evidence petitioner asserts his attorney should have discovered linking Myers to the victim

---

5. For example, Archuleta's first testimony about when petitioner told him he had killed a man with a .32 weapon appears to declare that the confession occurred before the actual killing. *See* IV R.Supp. 665–66. Archuleta also seemed to have trouble determining whether he sold petitioner the gun before or after the killing. *Id.* at 667. He seemed to have trouble remembering the kind of bullets involved in the alleged sale. *Id.* at 672–73. It was established that Archuleta was feuding with petitioner's cousin, with whom petitioner was living at the time of the shooting.

and their previous criminal activity goes to the heart of Myers' credibility. Further, at one point during their deliberations, the jurors indicated that they might be unable to reach a unanimous verdict. *Cf. Stafford v. Saffle,* 34 F.3d 1557, 1564–65 (10th Cir.1994) (considering, among other factors, length of jury deliberation, in determining whether failure to submit mitigating evidence to jury was prejudicial), *cert. denied,* —— U.S. ——, 115 S.Ct. 1830, 131 L.Ed.2d 751 (1995). All of these circumstances lead us to conclude that petitioner has alleged sufficient prejudice resulting from counsel's failure to investigate the relationship between Myers and the victim to entitle petitioner to habeas relief for ineffective assistance of counsel.

### III

#### A

█ The state court conducted a post-conviction evidentiary hearing on the issue of trial counsel effectiveness in failing to conduct an adequate investigation. It determined that counsel was not ineffective. That hearing, however, specifically failed to consider petitioner's newly discovered evidence that Myers had an extensive criminal history and had criminal links to the victim.

█ In habeas cases a federal court defers to the state court's findings of disputed issues of historical fact, *see, e.g., Smith v. Secretary of N.M. Dep't of Corrections,* 50 F.3d 801, 806 n. 2 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 272, 133 L.Ed.2d 193 (1995), absent some reason to doubt the adequacy or the accuracy of the fact-finding proceeding. *See* 28 U.S.C. § 2254(d). We have attempted to obtain a transcript of the state court hearing. We made inquiry not only of the district court but of the Utah Supreme Court and the state trial court. We were told they transmitted to us everything they have. Thus, the hearing either was not transcribed or the transcript has been lost.

█ We believe having that transcript is not essential to decide this appeal because the state court made no specific findings of historical fact underlying its conclusion that counsel was effective. *See* I R. doc. 3, addendum at 28–32. The brief state court order is conclusory in nature and silent as to petitioner's specific factual assertions supporting his ineffective assistance claims. The order also recites that petitioner's claim of newly discovered evidence is more properly raised as a motion for new trial to the trial court, but again without mentioning the nature of the purported new evidence. Thus its conclusion is not entitled to a presumption of correctness under § 2254(d). The ultimate determination of the effectiveness of counsel involves a mixed issue of law and fact that we review de novo. *Smith,* 50 F.3d at 818 n. 26 (citing *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070); *see also Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1536 (10th Cir.1994). Therefore, we are not bound by the state court's conclusion.

#### B

█ Having alleged a claim which, if proven, would entitle him to habeas relief, petitioner should receive an evidentiary hearing "[w]here the facts are in dispute, ... if [he] did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." *Townsend,* 372 U.S. at 312, 83 S.Ct. at 757.

█ In *Townsend,* the Supreme Court delineated six circumstances that would require a federal habeas court to conduct an evidentiary hearing.[6] *Id.* at 312–13, 83 S.Ct. at 756–57. By citing to *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), in our remand order, we focused the district court's inquiry on the fifth of those six circumstances. It requires

---

6. *Townsend* provides for a mandatory evidentiary hearing if: (1) the merits of the factual dispute were not resolved in a state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the state fact-finding procedure was not adequate to afford petitioner a full and fair hearing; (4) there are substantial allegations of newly discovered evidence; (5) the material facts were not adequately developed at the state hearing; and (6) for any reason it appears that the state trier of fact did not afford petitioner a full and fair factual hearing. 372 U.S. at 312–13, 83 S.Ct. at 756–57.

an evidentiary hearing when the facts were not adequately developed in the state court, so long as that failure is not attributable to the petitioner. *Keeney* provides that, in situations governed by this fifth *Townsend* circumstance, federal habeas courts must apply the now familiar cause and prejudice standard to determine whether a habeas petitioner's failure to develop relevant facts in state court will be excused. *Keeney*, 504 U.S. at 11–12, 112 S.Ct. at 1721. We review de novo the district court's determination that petitioner was not entitled to an evidentiary hearing. *Dever*, 36 F.3d at 1535.

The *Keeney* Court indicated that, in addressing *Townsend*'s fifth circumstance, attorney error will ordinarily not provide cause necessary to excuse a petitioner's failure to develop facts in state court because a petitioner does not have a Sixth Amendment right to counsel in post-conviction proceedings. *Keeney*, 504 U.S. at 10 n. 5, 112 S.Ct. at 1720 n. 5 (citing *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) and *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). In this case, however, respondent argues, and the district court based its denial of a hearing, on petitioner's failure to assert *at trial* the evidence linking Myers with the victim. Petitioner, of course, is constitutionally entitled to effective representation of counsel at trial. *E.g., Strickland*, 466 U.S. at 684–85, 104 S.Ct. at 2062–63.

Further, petitioner did afford the state a full and fair opportunity to address and resolve his claim that newly discovered evidence, which should have been discovered by competent counsel, established a link between Myers and the victim. *See Keeney*, 504 U.S. at 10, 112 S.Ct. at 1720. The state, however, expressly never considered the merits of that claim, although it also never asserted any procedural reason precluding it from doing so. Under these circumstances petitioner cannot be faulted for failing to develop this evidence in state post-conviction proceedings. *See Rhoden v. Rowland*, 10 F.3d 1457, 1460 (9th Cir.1993) (federal evidentiary hearing warranted where petitioner took all steps to develop facts, but state court deprived him of opportunity to do so); *Unit-*

*ed States ex rel. Collins v. Welborn*, 868 F.Supp. 950, 988 (N.D.Ill.1994) (if success on constitutional claim required presentation of evidence outside trial record, failure to develop record concerning that claim on direct appeal will not be deemed waiver so long as petitioner presented issue to state court during post-conviction proceedings); *United States ex rel. Williams v. Washington*, 863 F.Supp. 697, 702 (N.D.Ill.1994) (petitioner entitled to federal evidentiary hearing where she was not free to expand record on direct appeal; while she may have been able to obtain evidence through state post-conviction proceedings, state has conceded exhaustion of state court remedies for purposes of this federal petition), *aff'd*, 59 F.3d 673 (7th Cir. 1995).

■■■ Petitioner has consistently asserted that he was unable to present this evidence because of trial counsel's inadequate investigation. *See* I R. doc. 38 at 1 (among other issues, arguing evidentiary hearing required on petitioner's ineffective assistance claim); *id.*, doc. 55 at 1 (requesting reconsideration of dismissal of habeas petition, asserting, among other things, that the false testimony used to convict petitioner was obtained as a result of the ineffectiveness of trial counsel). As we have discussed above and determined, these assertions are sufficient to allege a viable claim for federal habeas relief. A claim of ineffective assistance will provide the requisite cause excusing petitioner's failure to develop these facts. *See Mann v. Scott*, 41 F.3d 968, 985 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1977, 131 L.Ed.2d 865 (1995); *see generally Banks*, 54 F.3d at 1514 (ineffective assistance in violation of Sixth Amendment can establish cause excusing procedural bar).

### C

■■■ The district court correctly noted that if cause for petitioner's failure to develop these facts in state court was predicated upon his claim that trial counsel was ineffective for failing to conduct an adequate pretrial investigation, then petitioner would also have to establish cause and prejudice excusing his failure to develop the facts underlying this ineffective assistance claim at the state

post-conviction evidentiary hearing. *Cf. Welborn,* 868 F.Supp. at 988 (ineffective assistance claim never presented to state court could not establish cause under *Keeney* ). In support of this claim, petitioner asserts the same documentary evidence that he alleges he presented to the state court in his post-conviction proceedings. He contends, however, that he was unable to also submit the crucial criminal histories of Myers and the victim because he was unable to obtain them without a court order. *See generally United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 751, 780, 109 S.Ct. 1468, 1470–71, 1485, 103 L.Ed.2d 774 (1989) (Freedom of Information Act, 5 U.S.C. § 552(b)(7)(C), exempts, as unwarranted invasion of personal privacy, disclosure of FBI criminal identification records, or "rap sheets," to third parties). This allegation, if true, provides sufficient cause to excuse petitioner's failure to present this evidence to the state courts. *See generally McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991) (cause requires showing of some external impediment preventing the construction or assertion of claim).

Further, the same allegations of prejudice supporting petitioner's ineffective assistance of counsel claim will also support prejudice under *Keeney* justifying an evidentiary hearing. *See Parkus v. Delo,* 33 F.3d 933, 938–39 (8th Cir.1994); *see generally Banks,* 54 F.3d at 1516 (sufficient allegations of ineffective assistance, underlying allegation of required prejudice, sufficient also to establish prejudice excusing state procedural default). Thus, we hold that petitioner has established entitlement to an evidentiary hearing on the merits of his claim.

### IV

■ We have carefully sifted through the procedural shoals to conclude that petitioner has satisfied the cause and prejudice test to obtain an evidentiary hearing on the one crucial issue in this case—the credibility of Myers. But even had petitioner failed in that regard we believe that the narrow "fundamental miscarriage of justice" standard adopted by *Keeney,* 504 U.S. at 12, 112 S.Ct.

at 1721, would apply here. This was not a strong case. As discussed, Archuleta's testimony was very weak. Myers lied at trial about his employment in Omaha and that he had served in the U.S. Army. He also lied about how soon he called police, when the dispatcher's record showed it was approximately two hours after the shooting rather than the few minutes suggested by Myers. Our review of the record convinces us that if Myers, who provided the only eyewitness testimony, could be shown to have an extensive criminal record, to have served in prison and in criminal activity with the victim—contrary to Myers' testimony that he had never been convicted of a crime and had only met the victim the night of the murder while sight-seeing—the jury almost surely would not have convicted petitioner. The trial record also shows one bit of testimony that apparently escaped everyone's attention. On direct examination Myers, who allegedly was in Salt Lake City alone, was asked by the prosecutor where he kept his truck the two or three nights before the shooting. In answering he stated "Oh, *we* parked it in one particular spot which is down by the Holiday Inn." IV R.Supp. 458 (emphasis added). This answer might indicate prior contact between Myers and the victim.

Reading the trial record, we have the distinct impression that if petitioner's allegations as to Myers' background, prior dealings and contacts with the victim are true, then petitioner may indeed be innocent. The respondent admits "no prior court has reached the merits of petitioner's claims," and apparently no post-conviction proceeding ever reviewed the transcript of petitioner's criminal trial. Brief of Appellee at 14. Rather, this case has become a procedural morass.

Petitioner alleges that after the trial assistant district attorney Bernard Tanner and Wendall Coombs of the FBI Criminal Identification Division alerted his ex-wife to the extensive criminal record of Myers. The criminal records of Myers and the victim are unavailable to petitioner because of the Freedom of Information Act exemptions. It seems to us that this case may be resolved rather quickly by a court order requiring the production of the entire criminal record of

Myers and the victim. A comparison may establish the truth or untruth of petitioner's claims. The information revealed pursuant to such an order should be the focus of the evidentiary hearing that results from the remand we here order. If the "rap sheets" are inconclusive the district court should appoint counsel for petitioner.

REVERSED and REMANDED for further proceedings consistent herewith.